7 So.2d 497
**ALTOONA WAREHOUSE CO. et al. v.
BYNUM et al.**
7 Div. 673.
Supreme Court of Alabama.
April 9, 1942.

Goodhue & Lusk, of Gadsden, for appellants.

Hood, Inzer, Martin & Suttle, of Gadsden, for appellees.

BROWN, Justice.

This appeal is by some of the defendants from an interlocutory decretal order of the circuit court, in equity, sustaining defendants' demurrer to the bill in so far as it seeks the appointment of a receiver, and overruling the demurrer in all other respects. After severance in the assignments of error, seeking a reversal of the decree in so far as it overruled the demurrer, the case was submitted thereon, without question by the appellees of the right of appeal from such decree.

██ The general rule is that the sustaining of a demurrer to a bill puts the complainant out of court unless he amends to meet the ruling, and in the absence of such amendment, the only proper decree is one dismissing the bill. Kelly v. Kelly, 216 Ala. 464, 113 So. 513; Pope v. Ledbetter et al., 216 Ala. 302, 113 So. 20, and authorities cited in Pope's case, 216 Ala. 303, 113 So. 20.

An exception to this rule was recognized in Pollak v. Stouts Mountain Coal & Coke Co. et al., 184 Ala. 331, 63 So. 531, wherein it was held that the effect of a decree sustaining a demurrer addressed to a paragraph of the bill, was to eliminate such section as though the same was stricken on motion. See, also, Dinsmore et al. v. J. H. Calvin Co., 216 Ala. 503, 113 So. 522. And in Sandlin et al. v. Anders et al., 210 Ala. 396, 400, 98 So. 299, 303, in a dictum pronounced on rehearing it was said that: "A decree sustaining a demurrer to a *part* of a bill has the effect of striking that part. The complainant may thereupon so amend the part stricken as to give the bill equity in that regard, or he may by express amendment, eliminate the portion stricken by demurrer, or, if the bill still contains equity, may proceed thereon without amendment as if the defective feature had been stricken on motion." Citing Pollak v. Stouts Mountain Coal & Coke Co., supra. [Italics supplied.]

The dictum pronounced in the Sandlin case was reaffirmed authoritatively in City of Birmingham et al. v. Louisville & N. R. Co., 216 Ala. 178, 112 So. 742.

██ The appointment of a receiver in the instant case was not a ground of equitable relief, but was ancillary to the relief sought, and the sustaining of the demurrer, merely eliminated this ancillary feature of the case, and an amendment was not essential, if the averments of the bill were sufficient to give it equity.

The bill is filed by a minority of the stockholders of a small private business corporation—a warehouse company engaged in the business of warehousing cotton and other products, and selling lumber and building material—against the board of directors constituted of four persons, who hold a majority of the capital stock, and the nominal vice president. The corporation is made a party defendant.

The bill, to state the substance of its allegations, alleges that the corporation has a capital stock of $30,000, divided into three hundred shares of a par value of $100; that the complainants each own stock in said corporation, and that the individual defendants, John R. Greer, J. M. Wright, M. J. Dickson, G. M. Phillips and E. A. Greer, own a total of one hundred and sixty shares, constituting a majority of all of the capital stock. That John R. Greer, J. M. Wright, G. M. Phillips and E. A. Greer, are in the management and control, and exercise the sole direction of the corporation's activity and business; that they have been elected as such by themselves as the majority stockholders. That M. J. Dickson, who has been elected by said majority a "nominal vice president", resides away from Altoona, the situs of the corporation, in Birmingham, has no direction, management or control of said business and takes no part therein. That said John R. Greer is the president and general manager of said corporation.

That said four active directors "have illegally voted to themselves, as directors of said respondent corporation" salaries, aggregating 14½% of the capital stock, entirely disproportionate to the small business of said corporation; that they have employed two bookkeepers at a salary of $600 per year; that said directors, or the said president and general manager refused to allow complainants to examine the books and records of said corporation until compelled thereunto by mandamus; that such books as were produced as the books and

records of said corporation have been so illy kept that the complainants with the aid of an expert accountant were unable to ascertain the financial status of the affairs of said corporation. But they did ascertain therefrom that said four directors and some of their kin had become indebted to the corporation, amounting to 17½% of the capital stock, which debts were long past due.

That from such records as the complainants were permitted to see it appears that many of the accounts and bills receivable are barred by the statute of limitations; or are of such character that their collectability is doubtful. That from such examination "it would appear that said respondent corporation is insolvent and that said four directors and officers in the management, control and direction of the business of said respondent corporation have been grossly negligent in the management and direction of said business, and especially in the letting out of the goods and assets of said respondent corporation and of collecting the accounts for the same, and complainants expressly aver that said four directors and officers in the management, control and direction of said business have been grossly negligent in the management thereof, in the collection of the accounts and notes due it and as otherwise hereinafter shown;

"That said respondent corporation is *now insolvent,* and your orators expressly charge that its insolvency will become more greatly pronounced under the management of said four directors and officers, if they are permitted to continue in the management, control and conduct of said business, as they have in the last several years, *until the liabilities of said corporation will exceed the assets thereof;* that there appears on such books and records as that complainant was permitted to examine, accounts and notes of dead people, some of whom have been dead for more than three years, and others for more than one year, and of one, if not more, persons who have bankrupted, none of which appears on said records, but just how many accounts on said records are against dead people, or people who have become bankrupt, your orators are not advised, but on information and belief they aver and charge that many of the names of the persons appearing on said books and records are now dead and said accounts are worthless; that many of the accounts as they appear on such records as your orators were permitted to examine, do not appear to be entitled to any credits, and that your orators are advised and, therefore, aver on information and belief, that a large number of said accounts and notes payable to the respondent corporation are entitled to credits which have not been entered on such records of the respondent corporation and your orators aver and charge that said four directors and said officers in charge control or direction of the operation of the business of said respondent corporation *have either fraudulently or negligently failed* to give credits and to enter them on such records of the respondent corporation and on the notes receivable, and that, therefore, it was utterly impossible for your orators to ascertain the exact amounts due on said accounts and notes receivable, or the value of the same as assets of said respondent corporation;

"That the records of said respondent corporation are so incomplete and confused, in their failure to show all the facts relating to each account and notes receivable, it is impossible to ascertain or determine from them to what extent the liability of said respondent corporation exceeds its assets, the extent of the losses sustained by it, and the extent of its annual losses, resulting from the conduct of the business thereof in the manner and as averred aforesaid; * * *

"That there has not been declared or paid a dividend to the minority stockholders on their stock in said respondent corporation *for the last nine years,* during which time the said four directors and officers in charge of said respondent corporation have operated and conducted *it in such manner as to benefit themselves solely and not the minority stockholders;* that the said M. J. Dickson, while a director of the corporation, lives in the City of Birmingham and has taken no part in, but has left entirely to said four other directors the management, control and direction of said respondent corporation and your orators aver that especially the said M. J. Dickson has been grossly negligent and careless in suffering the other four directors to so mismanage the affairs of said respondent corporation; * * *

"That the said John R. Greer, as President and Manager, and the other officers of said respondent corporation, have made no returns, so your orators are informed and aver on information and belief, of income or Federal corporation taxes to the Federal Government for five years and

have thereby subjected said respondent corporation to the imposition by the Federal Government of severe fines and penalties." [Italics supplied.]

The bill prays that the said individual defendants, acting as the directors and officers of the corporation, be restrained and enjoined from paying themselves money as salaries; and that they be required to account for the money heretofore converted to their own use, to account for losses resulting from gross negligence; for a discovery of the facts necessary for such accounting and to pay and satisfy their liability to the corporation.

That the corporation be dissolved and its assets, after paying debts, be distributed to the stockholders, and for general relief.

From the foregoing it is apparent that the bill presents the case in two aspects. The first, it seeks relief in behalf of the corporation against the directors, officers and others for wrongful dealings with corporate property, and a wrongful exercise of the corporate franchise, under the well-settled doctrine stated by Professor Pomeroy in 3 Pomeroy's Equity Jurisprudence, 4th Ed., § 1095, pp. 2524, 2525, and approved by this court in Gettinger et al. v. Heaney, 220 Ala. 613, 617, 127 So. 195, 198, that " 'Wherever a cause of action exists primarily in behalf of the corporation against directors, officers, and others, for wrongful dealing with corporate property, or wrongful exercise of corporate franchises, so that the remedy should regularly be obtained through a suit by and in the name of the corporation and the corporation *either actually or virtually refuses* to institute or prosecute such a suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders, *either individually* or suing on behalf of themselves and all others similarly situated, against the wrong-doing directors, officers, and other persons, but it is absolutely indispensable that the corporation itself should be joined as a party—usually as a co-defendant.' " That the relief when granted may be granted to the corporation. Taking as true the averments of the bill, and treating necessary amendments as made, we have no difficulty in holding that the bill, in this aspect, has equity, and is not subject to the objection that there is a nonjoinder of parties.

The bill in its other aspect seeks to dissolve the corporation and distribute its assets among the stockholders.

We reaffirm the doctrine in Phinizy et al. v. Anniston City Land Co. et al., 195 Ala. 656, 660, 71 So. 469, 471:

"It needs no argument to show that this power of intervention, however wholesome and necessary its exercise may sometimes be, is extremely dangerous in its tendencies, and should be exercised only in the plainest cases. It is not enough that the past prosecution of the corporate enterprise or business has been a financial failure, nor is it enough that its future prosecution will probably be devoid of profit, however strong the probability may seem. On the contrary, so long as the corporation is a going concern; so long as it possesses the means and ability to pursue one or more of its primary purposes or lines of business; and so long as the conditions exhibited do not demonstrate to a moral certainty that its continuation must by inevitable necessity result in serious loss in the near future, and in complete ruin sooner or later—a court of equity will not and should not deprive the majority stockholders of their right to carry on their business under their chosen management, however speculative and uncertain its prospects may seem to a disapproving and dissentient minority.

"Those who embark in a corporate enterprise as stockholders do so under an implied agreement that the business shall be controlled and directed by a majority of the stockholders, and that it shall endure for the period fixed by the corporate charter or by general law."

But in that case the officers and directors were not charged with misconduct calculated to destroy the "corporate entente cordiale"—that is the mutual confidence in the integrity of purpose and effort to carry on the affairs of the business of the corporation for the benefit of all the stockholders. 6 Thompson, 3d Ed., p. 527, § 4628. The statement of the law of corporations in that section is here pertinent and we quote it.

"The rule that a stockholder may not have a receiver appointed for mismanagement does not apply where the mismanagement complained of is wilful and its purpose is to ruin the corporation. A stockholder has an unquestioned right to the appointment of a receiver where the facts disclose a scheme on the part of the

directors or majority stockholder to wreck the corporation and dissipate its assets. Said one of the courts, after noting the hesitancy of courts to interfere in the management of corporations: 'It may further be said that this court has never denied power in a chancellor to prevent a scheme of irreparable injury and wrong, merely because the movers in that scheme speak and act in a corporate capacity rather than in an individual capacity. That solvent corporations are wrecked for purely selfish and illegal purposes, that minority interests are "frozen out," that business immorality has run amuck under the assumption that courts are powerless, is too true. But the assumption is wrong. Judicial hesitancy does not mean judicial atrophy or paralysis. The board of directors of a corporation are but trustees of an estate for all the stockholders, and may not only be amenable to the law, personally, for a breach of trust, but their corporate power under color of office to effectuate a contemplated wrong may be taken from them when, by fraud, conspiracy, or covinous conduct, or extreme mismanagement, the rights of minority of stockholders are put in imminent peril and the underlying, original, corporate entente cordiale is unfairly destroyed. It would be a sad commentary on the law if, when the trustee of a corporate estate is making an improper disposition of it, or has shown improper partiality toward one of its conflicting parties, or has put the estate in a fix it is liable and likely to be either wasted or destroyed, or mercilessly taken from all and given to a part, a court could not reach out its arm and preserve and administer the estate. We have never so declared the law.' There was a case of this character where four of the stockholders got control of the majority of the stock, elected their officers, pocketed the dividends, kept false books to deceive the other stockholders and bought a worthless franchise for which they mortgaged all the corporate property, for the purpose of having the mortgage foreclosed and the property of the corporation wiped out, and a receiver was appointed."

■ There is nothing in Phinizy et al. v. Anniston City Land Co., supra, that is contrary to the law as there declared. One of the major purposes of a private business corporation underlying its organization and promotion according to law is that its affairs will be conducted, not for the benefit of the controlling stockholders, but for the benefit of all of the stockholders, that each and all may profit by their investment in its stock through dividends earned in the conduct of the business, and "when a private business corporation has failed of the purposes and objects of its creation, a single stockholder may maintain a bill in equity for the dissolution of the corporation and the distribution of its assets among those entitled thereto, and this may be done whether the corporation be solvent or insolvent. Ross v. American [Banana] Co., 150 Ala. 268, 43 So. 817; Minona [Portland Cement] Co. v. Reese, 167 Ala. 485, 52 So. 523." Decatur Land Co. et al. v. Robinson, 184 Ala. 322, 324, 63 So. 522, 523; Van Antwerp Realty Corporation et al. v. Cooke, 230 Ala. 535, 162 So. 97.

■ There is nothing in the allegations of the bill showing that all the stockholders can not, without inconvenience, be made parties, and in these circumstances the bill in this aspect was subject to the fifty-second ground of demurrer. Gettinger et al. v. Heaney, 220 Ala. 613, 127 So. 195.

The bill in the last aspect is not without equity, it is subject to the objections that all the stockholders, in the absence of great inconvenience, should be made parties to the bill.

■ The allegations of paragraph 11 are not allegations of issuable fact, but the mere conclusion of the pleader. The allegations of paragraph 12 are merely supplicatory, repeated in the prayer of the bill, and do not present issuable facts that would in any way aid the equity of the bill, but the court will not be put in error for overruling the demurrer to these paragraphs. Michie et al. v. Bradshaw et al., 227 Ala. 302, 149 So. 809. A motion to strike would be more appropriate.

In Pollak v. Stouts Mountain Coal & Coke Co., supra, the effect of sustaining the demurrer to a paragraph of the bill was to eliminate one element of damages recoverable under the bill for an accounting; hence the sustaining of the demurrer was error to reverse. For the error noted, the decree is reversed and remanded.

Reversed and remanded.

GARDNER, C. J., and THOMAS, BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.

KNIGHT, J., not sitting.