37 So.2d 507

**SMITH–HOWARD GIN CO. et al. v. OGLETREE.**

**7 Div. 951.**

Supreme Court of Alabama.

Oct. 7, 1948.

Rehearing Denied Nov. 18, 1948.

C. W. Stringer, of Talladega, and Borden Burr, Samuel H. Burr and Benners, Burr, Stokely & McKamy, all of Birmingham, for appellants.

Harvey Deramus, of Birmingham, and Brewer Dixon, of Talladega, for appellee.

BROWN, Justice.

This is an appeal from an interlocutory decree sustaining in part and overruling in part the separate demurrers filed by the respondent to the bill and refiled to the bill as amended with cross-assignment on the record by the appellee, the complainant. The appellant · makes 116 assignments of error on the record. The appellee makes three cross-assignments. In speaking of the bill hereinafter, we refer to the bill as last amended to which the demurrers were directed and refiled.

The demurrers of each of the respondents are addressed "to the original bill of complaint in the above entitled cause and to each paragraph thereof separately and severally, and to each aspect of the bill of complaint separately and severally, upon the following separate and several grounds." This form was used in refiling the demurrers to the bill as amended. Under repeated rulings of this court the demurrers are addressed to the bill as a whole. Oden v. King et al., 216 Ala. 504, 113 So. 609, 54 A.L.R. 1413; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67; Badham et al. v. Johnston et al., 239 Ala. 48, 50, 193 So. 420; Hall v. Hall, 241 Ala. 397, 406, 2 So.2d 908; Barnes v. Powell, 241 Ala. 409, 410, 3 So.2d 80; Dean v. Lusk, 241 Ala. 519, 525, 3 So.2d 310; First Nat. Bank of Birmingham v. Bonner, 243 Ala. 597, 599, 11 So.2d 348; Baker v. Farish, Supt. of Banks, 244 Ala. 178, 179, 180, 12 So.2d 547; Wells v. Wells, 249 Ala. 649, 651, 32 So.2d 697. In the further progress of this opinion we will so treat them.

The bill by appellee Ogletree, alleges that he owns 20 shares of the capital stock constituting 40% of the capital stock of the respondent Smith-Howard Gin Co., Inc., a corporation organized and existing under the laws of the State of Alabama, incorporated Sept. 9, 1930, in Talladega County. The object of the corporation, as alleged, was to construct and operate cotton gins; buy, sell or lease real estate; buy cotton, cotton seed, cotton seed meal and hulls and any other farm product incident to its business. Copies of the charter and certificate of incorporation are attached to and made exhibit A to the bill.

The bill is filed against the corporation, L. L. Smith and R. R. Gross. It is alleged that the complainant purchased his stock from Smith, paid cash therefor and received appropriate certificates of stock during the year 1935; that he was thereafter made president of the corporation, actively operated its business without compensation other than dividends received on his stock for a period of seven or eight years, devoting his entire time and attention thereto; that there are only three stockholders:—complainant who owned 40% of the stock; Smith who owned 60% and one or more shares being registered in the name of respondent Gross "solely for the purpose of complying with the laws of the State of Alabama."

That after complainant had successfully managed and operated the business of the corporation with the aid of Smith, who received and deposited in a bank of which he was the president the earnings and receipts of said corporation. That at the time complainant was made president of and put in charge of the corporation, the corporation was greatly in debt and during the several years he managed and operated said business all of said debts were paid and said corporation put in good financial condition and had on deposit a considerable sum of money—$20,000—in its surplus account. That in the fall of 1943, after the sale of the gins owned by the corporation and after the corporation had ceased to operate gins—the major business for which it was incorporated—the respondent Smith stated to complainant that new officers would have to be elected and that the complainant, on account of his health, would no longer serve as president and that he, Smith, would be elected president and draw a salary of $1500.00 per year. Complainant did not consent to such arrangement. "Complainant is informed and believes and upon such information and belief avers that since said date, respondent Smith has drawn or received a salary of

$1500.00 per year from the corporation; and complainant avers that the payment of such salary to Smith, without an express contract therefor, is a misappropriation and misuse of the funds of the corporation.

"On or about January 1, 1947, the Respondent Smith, informed the Complainant, for the first time, that he was not a stockholder of Smith Howard Gin Company, Inc., a corporation, and that the Four Thousand Dollars ($4,000.00) paid for the stock by the Complainant in 1935, was merely a loan of the money by the Complainant to said Respondent, and that he, the Respondent Smith, was then ready, willing, and able to repay said loan. Said statement was made by the Respondent Smith, after the Complainant had actively conducted the business affairs of the Respondent Corporation for a period of to-wit: eight (8) years, and as a result of the Complainant's management and supervision, all of the debts of said Company had been fully paid and its assets greatly increased, and said corporation was reasonably worth to-wit: $80,000.00. In other words, the Respondent Smith, did not so inform the Complainant that he was not such stockholder until the Respondent Corporation and the Respondent Smith, as one of its principal stockholders, had received the benefit of eight (8) years of hard and laborious service of the Complainant.

"The Respondent Smith, on to-wit: January 1, 1947, and since said date, has in his possession all of the books, records and accounts of the Respondent Corporation, and although the Complainant on to-wit: January 13, 1947, made a written demand upon the Respondent Smith, to be allowed the right and privilege to inspect the books, records, and accounts of the Respondent Corporation, such permission was refused, and at said time the Respondent Smith, informed the Complainant, or his duly authorized agent or attorney, that the Complainant was not a stockholder, director, or officer of the Respondent Corporation and had no interest therein. On to-wit: January 1, 1947, and since said date, the Complainant has owned forty (40) shares [percent] of the capital stock of said Corporation and has, at all times, owned and had in his possession the Certificates evidencing said shares, which said Certificates do not show or reflect any lien, right, title, or encumbrance thereon, in favor of the Respondent Smith. (Brackets supplied.)

"Complainant has made no demands upon the Respondent Gross, as he is powerless to do any act; and although the Complainant is rightfully entitled to inspect the books, records and accounts of said corporation, the Respondent Smith, has wrongfully refused to allow him this right.

"The Complainant is informed and believes, and upon such information and belief, avers that although the Respondent Corporation owns unencumbered assets of a large value, and has an appreciable amount of cash on hand, nevertheless, the Respondent Smith, has stated that the Corporation is to mortgage or encumber some of its real estate, and is to acquire other real estate and make large expenditures by the erection of buildings and for other purposes. Complainant avers that this will be done, unless enjoined or restrained by this Honorable Court. Such expenditures for the purchase of real property and for the erection or construction of commercial buildings in Sylacauga by the Respondent Corporation, is ultra vires and is for a purpose not authorized by the Articles of Incorporation of said Company.

"Since the complainant has no longer been directly connected with the business affairs of said Corporation, its affairs have been directly under the supervision, direction, management, and control of the Respondent Smith, and the Complainant has not been notified of any meetings of the stockholders or directors, nor has he been consulted in any way, relative to the management of the affairs of said Corporation; and the Respondent Smith, is solely managing the affairs of said Corporation in any way or manner he sees fit to do. * * *"

The complaint further avers that at the time the corporation ceased to operate cotton gins and made sale of its last gin the complainant's stock was reasonably worth $32,000.00, which fact was known

370

to Smith; that Smith did not dispute the right of complainant as a stockholder until January 1, 1947, "at which time he connived the scheme to claim that the $4,000 paid by the Complainant for said stock was merely a loan by Complainant to him and at such time offered to pay the Complainant $4,000.00 for the surrender of the said stock, which the Respondent Smith well knew to be worth to-wit: $32,000.00. All of the actions of the Respondent Smith in assuming the absolute control and domination of the affairs of the Respondent Corporation to the exclusion of the Complainant and in disregard of the Complainant's rights as a stockholder have been with the purpose and intention to compel the Complainant to accept $4,000.00 for his said stock and to defraud him of the true and rightful value thereof."

"The Respondent Smith, on to-wit, January 1, 1947, stated to the Complainant or his agent, that he would not recognize the Complainant's rights as a stockholder; that he would not allow the Complainant to participate in the affairs of the corporation; that he was going to pay the Complainant $4,000.00, and not one cent more and that the Complainant had just as well take this amount out of the business. Said Respondent refuses to give to the complainant any information whatsoever as to the affairs of the corporation and although the Complainant has been in-. formed and believes and upon such information and belief avers that the Respondent Smith is now making loans for the corporation and is loaning money of the corporation, *there is no duly authorized Board of Directors to do and carry on the affairs of the corporation,* and such affairs are now being conducted by the Respondent Smith in any way or manner in which he sees fit. [Italics supplied.]

"All of these actions on the part of the Respondent Smith in withholding all information relative to the affairs of the corporation from the Complainant and refusing to allow the Complainant any representation of any kind, and refusing to declare any dividend out of the profits and refusing to make any report whatsoever on the affairs and business of said corporation, is done in pursuance of the scheme connived by said Respondent to defraud the Complainant of the true value of the capital invested by him in the Respondent corporation. * * *

"Since January 1, 1947, serious and acute dissension exists between the Complainant and the Respondent Smith, and said Respondent has spoken profanely and vilely of the Complainant and has openly used approbrious words concerning the Complainant and due to this dissension, the Complainant and the Respondent cannot harmoniously administer the affairs of said corporation. The only way and manner in which the business of the corporation can be carried on and conducted is to allow the Respondent Smith to operate it as his own without representation of any kind whatsoever, for and in behalf of the Complainant."

Among other things the complainant prays that a "temporary writ of injunction or restraining order issue herein, enjoining and restraining the Respondent Corporation, and the Respondent L. L. Smith, from mortgaging or placing any lien or encumbrance upon the property of the Respondent Corporation, and restraining and enjoining the said Respondents from expending or disbursing the funds of the Respondent Corporation in the erection or construction of further or additional business or commercial buildings, and that said temporary injunction be made final and permanent; that upon a final hearing hereof the court will Order, Adjudge and Decree * * *.

"(1) The Complainant to be a stockholder of the Respondent Corporation to be the owner of twenty (20) shares of the capital stock of said corporation, representing forty percent (40%) of the total authorized outstanding stock of said corporation.

"(2) That the Respondent Corporation be dissolved, and that its assets be ordered sold under the directions of this Court, and the proceeds thereof be distributed to the said stockholders, including the Complainant.

"(3) And if the Complainant be mistaken in the relief prayed for in the immediately preceding paragraph, then in the

alternative, that a dividend to the stockholders of record be declared in an amount to be determined by this Court.

"(4) That the Complainant has the lawful and legal right to examine the books, records and accounts of the Respondent Corporation, and that the Respondent Smith, be required, under appropriate orders of this Court, to produce said books, records and accounts for the inspection of the Complainant or his duly authorized agent or attorney.

"And if your Complainant be mistaken in the relief specially prayed for, then he prays for such other, further, or additional relief to which he may be entitled."

The decree of the circuit court sustained the demurrers of each of the respondents to that aspect of the bill of complaint as last amended which seeks dissolution of Smith-Howard Gin Company, Inc., a corporation, and seeks to have its assets sold under direction of the court and the proceeds thereof distributed to the stockholders of said corporation and overruled the demurrers of each of said respondents to each and all of the other aspects of said bill of complaint.

The grounds of demurrer are too numerous to be stated but the appellants each insist that the court erred in overruling the demurrer to "that aspect of the bill which sought to have the court declare the payment of dividends"; in overruling respondents' demurrer to "the aspect of the bill which sought an examination of the books and records of the respondent corporation and the requirement that respondent Smith produce such books for inspection to the complainant or his attorney"; insisting that complainant had a complete and adequate remedy by mandamus; in overruling the "demurrers of the respective respondents to that aspect of the bill which sought injunction relief"; in overruling the demurrers of respondents "to that aspect of the bill which sought a decree adjudging complainant to be a stockholder of respondent corporation and to be the owner of 20 shares of the capital stock of said corporation representing 40% of the total authorized outstanding stock of said corporation", and

further that the court erred in overruling the demurrers of the respective respondents "challenging the equity of the bill."

The cross-assignments of error made by the appellee challenge the soundness of the decree insofar as it sustains the demurrers of respondents to the aspect of the bill which seeks a dissolution of the corporation.

A sufficient answer to all of the appellant's contentions, except the last, is that the demurrers of the respective respondents were not specifically addressed to any aspect or part of the bill, but to the bill as a whole. Wells v. Wells, 249 Ala. 649, 651, 33 So.2d 697, and authorities cited supra.

This leaves for consideration the last contention that the bill is without equity because the complainant has a complete and adequate remedy at law.

In Gettinger et al. v. Heaney, 220 Ala. 613, 617, 127 So. 195, 198, it was observed: "It is too well settled to permit of doubt that a minority stockholder is entitled to the appointment of a receiver, where the corporation has failed of its purpose, or where the facts disclose a scheme on the part of the directors or a majority stockholder to wreck the corporation and dissipate its assets, and the board of directors being, as to the stockholders, trustees of the corporate property and affairs, may be deprived of their power, 'when, by fraud, conspiracy, or covinous conduct, or extreme mismanagement, the rights of minority stockholders are put in imminent peril and the underlying, original, corporate *entente cordiale* is unfairly destroyed.' * * *" [Italics supplied.] The principles stated, in the light of the allegations of the bill in this case warranted intervention by temporary injunction to protect the assets of the corporate estate. 6 Thompson on the law of corporations, 3d Ed. § 4628, p. 527, was quoted and approved by us in Altoona Warehouse Company et al. v. Bynum et als., 242 Ala. 540, 546, 7 So.2d 497, 502. It was there stated:

"'* * * Judicial hesitancy does not mean judicial atrophy or paralysis. The board of directors of a corporation are

but trustees of an estate for all the stockholders ,and may not only be amenable to the law, personally, for a breach of trust, but their corporate power under color of office to effectuate a contemplated wrong may be taken from them when, by fraud, conspiracy, or covinous conduct, or extreme mismanagement, the rights of minority of stockholders are put in imminent peril and the underlying, original, corporate entente cordiale is unfairly destroyed. It would be a sad commentary on the law if, when the trustee of a corporate estate is making an improper disposition of it, or has shown improper partiality toward one of its conflicting parties, or has put the estate in a fix it is liable and likely to be either wasted or destroyed, or mercilessly taken from all and given to a part, a court could not reach out its arm and preserve and administer the estate. We have never so declared the law.' * * *"

■ Treating as true the allegations of the bill, the corporation is without a board of directors and in the absence of the complainant, the minority stockholder, there is not sufficient number of stockholders to form a board of directors. The bill alleges that respondent Gross is merely a "dummy". The averments of the bill, if true, that the acts of Smith acting as and for the corporation to deny and deprive complainant of his rights, not only is fraudulent as to complainant, but is a fraud on the law, which requires at least three directors to any corporation formed under our statutes, and these directors must be bona fide stockholders. Code of 1940, Tit. 10, § 22; Holcomb v. Forsyth, 216 Ala. 486, 491, 113 So. 516. Courts of equity look through form to substance and mold their decrees to protect the rights and equities of the parties. Hughes v. Duke, ante, p. 220, 36 So.2d 300.

■ In the light of the foregoing authorities mandamus is not, as asserted by apellants, a complete or adequate remedy to accomplish justice between the parties. The averments of the bill show that the alleged corporation, such as it is, is dominated and controlled by the majority stockholder acting for and in its name to defraud the complainant of his rights. By his acts in assuming dominion and control of the corporate estate to defraud the complainant, as alleged in the bill, he has become a trustee ex maleficio and in such cases courts of equity have jurisdiction to require such trustee to account. Loftin v. Smith, Ala.Sup., 36 So.2d 312;[1] Cowin et al. v. Salmon et al., 248 Ala. 580, 28 So. 2d 633. The facts alleged and the general prayer for relief are sufficient to uphold the equity of the bill.

Our conclusion, therefore, is that the decree of the circuit court overruling the several demurrers of the several appellants was free from error and will be affirmed. That the degree insofar as it sustained the demurrer of the Smith-Howard Gin Co., Inc., and the other respondents was laid in error and is reversed. The case will be remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.

FOSTER, LAWSON and STAKELY, JJ., concur.

### On Rehearing.

BROWN, Justice.

This case was placed on rehearing by the writer to permit Mr. Burr, one of appellants' attorneys, to file an additional brief which had just been completed, resisting appellee's cross-assignments of error challenging the soundness of the decree of the circuit court insofar as it sustained the appellants' demurrer "as to the aspect of said bill of complaint wherein complainant seeks to have Smith-Howard Gin Co., Inc., dissolved and its assets sold under a decree of the court and the proceeds thereof distributed." This phase of the demurrer assigns grounds 1, 10, 11, 13, 14, 15, 17, 18, 20, 22, 23, 24, 25, 26, 27, 28, 29, 32, 33, 34, 35 and 36 theretofore addressed to the bill as a whole. Leave was also granted appellants to file supplemental brief within the time allowed for rehearing to criticize the opinion promulgated October 7, 1948. Said briefs have been filed, the first mentioned on October 9th

---

[1] Ante, p. 202.

and the other on October 22nd, and both limited to a discussion of the cross-assignments of error.

The specific assignment to "separate aspects" was in the concluding paragraph of the separate demurrer of the several defendants. These specific assignments to separate aspects seem to rest upon the nature of the relief prayed—the prayer—rather than to the allegations of fact in the stating part of the bill.

■ It is a well settled rule of equity pleading that when a bill is sufficient in its allegation of facts to make a case for equitable relief and contains a proper prayer, it is not demurrable because it prays for unwarranted relief. Wilks et al. v. Wilks, 176 Ala. 151, 57 So. 776; Dickson v. Dickson, 247 Ala. 330, 332, 24 So.2d 419; Local Union No. 57, Brotherhood of Painters, Decorators and Paperhangers of America v. Boyd, 245 Ala. 227, 16 So.2d 705; Patton v. Birmingham Trust & Savings Co., 235 Ala. 586, 180 So. 264.

■ Whether or not a bill is single in scope and purpose or presents a case in more than one aspect or is multifarious must be determined from its allegations of fact. If the pleader by his allegations seeks to present the case in a double aspect or in alternative aspects and the allegations in one or more of the aspects do not make a case for equitable relief or bring into the case different and unrelated transactions as to property or rights between other parties, the question of duplicity or multifariousness may be raised by demurrer. On the other hand if the facts alleged present a controversy between the same parties relating to the same property and property rights and make a case for equitable relief and the bill is single in its scope and purpose, though it prays for different or unwarranted relief, it is not subject to demurrer, and the court will determine the appropriate scope and character of relief to be granted on the final hearing. This is the effect of Equity Rule 15, Code 1940, Tit. .7 Appendix, interpreted in the light of Alabama Equity Rule 1, Code 1940, Tit. 7 Appendix, and the former decisions of this court. Said Rule 1 provides, inter alia:

"They (the equity rules) shall be construed to secure the just, speedy, and inexpensive determination of every such suit, and supersede all sections of the Code and Statutes, or parts thereof, in conflict with these Rules." Code of 1940, Tit. 7, p. 1037.

Equity Rule 15 provides:

"Ruling on multifariousness. A bill is not necessarily multifarious when it seeks alternative or inconsistent relief growing out of the same subject matter, or founded on the same contract or transaction, or relating to the same property between the same parties.

"The court has the power, either on demurrer for multifariousness or on motion or of its own motion up to final decree, to order a severance of combined causes of action; and when so separated the causes may continue with or without retaking or taking further testimony, or decrees pro confesso, as the court shall direct in its reasonable discretion." Code of 1940, Tit. 7, p. 1055.

In City of Mobile v. McCown Oil Co., 226 Ala. 688, 692, 148 So. 402, 405, the previous utterance of the court was reiterated and followed that, " * * * 'In testing a bill for multifariousness, the whole bill must be considered. *Every case must be governed by its own peculiar facts.* In determining the question, multiplicity of suits should be avoided. It is left in a measure to the sound discretion of the court. 6 Mayf.Dig. 318, § 114½; Sicard v. Guyllou et al., 147 Ala. 239, 41 So. 474.'" [Italics supplied.]

The court further observed, "The suit here is entirely between the city of Mobile and the one respondent. Its purpose is single, and its only object is to secure a judicial ascertainment of the amount due by the respondent to the city for license taxes in the conduct of respondent's business, and for incidental relief, connected with the main relief sought. * * *" City of Mobile v. McCown Oil Co., supra.

In Magnolia Land Co. v. Malone Investment Co., 202 Ala. 157, 79 So. 641, the court observed: "The relief to be award-

374

ed in any case is determined by the facts alleged in the bill; and, under the general prayer the complainant may, in the ordinary case, have the relief authorized by the facts averred, although he may be mistaken in the special relief prayed. Rosenau v. Powell, 173 Ala. 123, 55 So. 789. * * *"

The origin, history and analysis of the prevailing rule in Alabama prior to adoption of what was § 6526 of the Code of 1923 now part of Equity Rule 15, supra, is interestingly set forth in Sims' Chancery Practice, §§ 209-219, showing the vexing uncertainties that brought about the enactment of said § 6526, supra, and the subsequent liberalization and clarification by Rule 15, supra.

■ It follows, as a matter of logic and law, that when complainant's bill presents a state of facts entitling him to equitable relief, relating to the same subject-matter and dealings between the same parties single in its scope and purpose, it cannot be divided up into aspects and made duplicitous by the manner in which the defendants address their demurrers thereto.

The facts alleged in the bill are fully stated in the opinion of October 7th showing, in short, that Smith, the majority stockholder, is in command and control of the corporation, has possession of its records, its assets and corporate estate and is acting for and in the name of the corporation, using it as a cloak or cover to defraud the complainant of his property rights in said corporation and its estate, and has assumed to take over and claim to town the stock which he sold to complainant and for which complainant paid, together with all the increment thereof, and has appropriated the same to the use of respondents, repudiating and denying complainant's rights therein. In short, the respondents, through the control and domination of Smith, have converted complainant's rights and interest in the corporation. Bolling v. Kirby, 90 Ala. 215, 7 So. 914, 24 Am.St.Rep. 789.

■ The bill is single in its scope and purpose, seeking to recover or to require respondents to account for the complainant's interest in the corporate property and estate. As related to complainant's rights of property, in these circumstances, Smith and the Smith-Howard Gin Company, Inc., are one and inseparable. To repeat, in part, what was said in the original opinion, "It would be a sad commentary on the law if, when the trustee of a corporate estate * * *, has shown improper partiality toward one of its conflicting parties, or has put the estate in a fix it is liable and likely to be either wasted or destroyed, or *mercilessly taken from all and given to a part,* a court could not reach out its arm and preserve and administer the estate. * * *" This statement is taken from 6 Thompson on Corporations, 3rd Ed., p. 327, § 4628, cited with approval in Altoona Warehouse Co. v. Bynum, 242 Ala. 540, 545, 546, 7 So. 2d 497. [Italics supplied.]

■ The bill being single in its scope and purpose, the demurrers filed go to the sufficiency of the bill as a whole and the questions raised were fully treated in the opinion heretofore promulgated.

Application for rehearing overruled.

FOSTER, LAWSON and STAKELY, JJ., concur.