39 So.2d 380

PARAMOUNT–RICHARDS THEATRES, Inc., v. STATE.

3 Div. 504.

Supreme Court of Alabama.
March 17, 1949.

Richard T. Rives, of Montgomery, and John W. Lapsley, of Selma, for appellants.

A. A. Carmichael, Atty. Gen., and Hugh F. Culverhouse, Asst. Atty. Gen., for appellee.

Lawrence K. Andrews, of Union Springs, for Alabama Theatre Owners Association, amicus curiae.

BROWN, Justice.

This appeal is from a decree of the circuit court, in equity, sustaining the state's demurrer to the bill filed by the appellant in pursuance of an appeal from the assessment of use taxes by the state department of revenue against the appellant on July 9, 1947, which with interest aggregated $11,625.08.

The question presented is not whether it was within legislative competence to levy a use tax for the activity in which appellant is engaged, but whether or not the activities, as disclosed by the allegations of the bill, fall within the provisions of the statute, Code of 1940, Title 51, § 788. Said section provides:

"An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property *purchased at retail* on or after the first of March 1939, for storage, use or other consumption in this state *at the rate of two percent of the sales price of such property,* except as provided in subsection (b) of this section." (Subsection (b) which immediately follows is not pertinent to the case at hand.) [Italics supplied.]

The facts alleged in the bill, upon which appellant bases its attack on the assessment, are: "In the determination of computation of said assessment the State Depart of Revenue erroneously and illegally included therein the amount of rentals paid by taxpayers for moving picture films, and trailer films in connection therewith, leased by taxpayer in interstate commerce from lessors situated outside the State of Alabama, under which lease such films and trailers were shipped in interstate commerce by said lessors to taxpayer, as lessee at Mobile, Alabama, and pursuant to

which lease said films and trailers were exhibited or used by lessee in the conduct of said moving picture theatre; after which, said films and trailers were returned by taxpayer to said lessors, by shipments thereof made in interstate commerce from said Mobile, Alabama, to the point or points outside of the State of Alabama from which the same were shipped, as required under the terms of the lease or leases relating thereto; the amount of such rentals in the year 1944 being $170,050.43, the amount of such rentals in the year 1945 being $161,210.70 and the amount of such rentals for the year 1946 being $170,710.50, total $501,971.63, resulting in an erroneous, illegal and excessive assessment of use tax for said years in the total amount of $10,139.43, and interest thereon.

"(b) Said films and trailers hereinabove mentioned were leased or rented under bona fide leases or rental agreements under which the taxpayer as lessee was given no right or option to purchase said films or trailers, the title to which was retained by lessors; and said leases or rental agreements were not used for the purpose of affecting any sale of said films or trailers to taxpayers; nor were said films or trailers sold or agreed to be sold by lessors to said taxpayer; that said transactions did not involve in fact or in law a sale or agreement to sell said films or trailers to taxpayers; that neither said films or trailers were in fact or in law sold to taxpayer or purchased by taxpayer; that there was no purchase of said films or trailers within the meaning of the Alabama Use Tax Act; that there was no sale or sales price of said films or trailers within the meaning of the Alabama Use Tax Act; and therefore said assessment is erroneous, illegal and excessive in the amount and to the extent of $10,039.43, and interest thereon. * * *."

The contention of appellant is that the renting or leasing of said films and trailers shipped in interstate commerce to taxpayer under the facts alleged in the bill does not constitute a *purchase or retail* of tangible personal property for use or storage or other consumption in this state and to apply the levy to said activities would burden interstate commerce in violation of the Constitution of the United States.

The contention of the state, on the other hand, is that the term "retail sale" embodied in § 787, Title 51, Code of 1940, in connection with the definition of the word "purchase" brings the case presented by the bill within the influence of § 788, supra.

Subsection (e) of said § 787 defines the term as, " 'sale at retail' or 'retail sale' shall mean all sales of tangible personal property except those above defined as wholesale sales. * * *" Subsection (i) of said section defines the word "purchase" as meaning, "acquired for a consideration, whether such acquisition was effected by a transfer of title, or of possession, or of both, or a license to use or consume; whether such transfer shall have been absolute or conditional, and by whatsoever means the same shall have been effected; and whether such consideration be a price or rental in money, or by way of exchange or barter."

As shedding light on the language of the levying section (§ 788), towit, "An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property *purchased at retail*," we are authorized to look to the definition of the term "wholesale" embodied in § 787, supra, that: "The term 'wholesale sale' or 'sale at wholesale' means the sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers *to users or consumers* not for resale. * * *" [Italics supplied.]

Subsection (j) defines the term "sale price" as follows: "The term 'sale price' means the total amount for which tangible personal property is sold, including any services (including transportation) that are a part of the sale, valued in money, whether paid in money or otherwise, and includes any amount for which credit is given to the purchaser by the seller, without any deduction therefrom on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest charged, losses or any other expenses whatsoever; provided, that cash discounts allowed and taken on sales shall not be included and sales price shall not

include the amount charged for property returned by customers when the entire amount charged therefor is refunded either in cash or by credit."

It was stated by counsel at the bar in argument against the validity of the levy on submission of the case, "that appellant's only stock in trade is the pictures photographed on the films which appellant uses in the operation of its business and these pictures are sold to the individuals who purchase and pay for tickets of admission and attend the show."

The films are leased by the operator from nonresident producers and are shipped to the show operator in interstate shipments, who receive them, break the package, retain them for use and after using them, they are reshipped to the producer. Neither the lease nor the license for use of the films are made exhibits to the bill nor are their contents stated. We are not advised by the allegations of the bill whether the shipments of each such films are leased and shipped separately, constituting a single transaction or whether they are shipped under a long-term lease, covering a large quantity of film shipments and delivered at regular intervals to meet the needs of the lessee in the usual and daily conduct of business.

The scope and purpose of the bill appears from its allegations and prayer to be single—to invalidate and void that part of the alleged assessment based on the aggregate annual rental price of said film. Smith-Howard Gin Co. v. Ogletree, 251 Ala. 366, 37 So.2d 507.

█ "It is universally recognized that the power to tax for revenue is essentially an attribute of sovereignty conferred by the people, through the Constitution, on the state, and vested in the legislative department, which it may exercise within constitutional limitations without restraint or judicial supervision. Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am. St.Rep. 143; Barefield v. State, [16 Ala. App. 491], 79 So. 396; Dunlap v. State, [16 Ala.App. 440], 78 So. 638. * * *" Western Union Telegraph Co. v. City of Decatur, 16 Ala.App. 679, 681, 81 So. 199, 201.

█ "Although it is sometimes broadly stated either that tax laws are to be strictly construed or, on the other hand, that such enactments are to be liberally construed, this apparent conflict of opinion can be reconciled if it is borne in mind that the correct rule appears to be that where the intent or meaning of tax statutes, or statutes levying taxes, is doubtful, they are, unless a contrary legislative intention appears, to be construed most strongly against the government, and in favor of the taxpayer or citizen. Any doubts as to their meaning are to be resolved against the taxing authority and in favor of the taxpayer, or, as it is sometimes put, the person upon whom it is sought to impose the burden. * * * ." 51 Am.Jur. pp. 367, 368; City of Bessemer v. Tennessee Coal, Iron & R. Co., 131 Ala. 138, 142, 31 So. 492; Pappanastos v. State Tax Commission, 235 Ala. 50, 177 So. 158; National Linen Service Corporation v. State Tax Commission, 237 Ala. 360, 186 So. 478.

The language of the levying statute, to repeat, is: *"Property taxed; persons liable.—*(a) *An excise* tax is hereby imposed on the storage, use or other consumption in this state of *tangible* personal property purchased at retail on or after the first of March 1939, for storage, *use* or other consumption in this state *at the rate of two percent of the sales price of such property,* * * *."* [Italics supplied.]

The quoted language of the statute circumscribes the levy by limiting it to an excise tax, under the facts as they now appear, on the *use* in this state of *tangible personal property purchased at retail at the rate of two percent of the sale price of such property.*

The definitions of the terms "purchase" and "sale price" embodied in § 787, supra, are of little or no aid in ascertaining the legislative intent for the reason that they are equally applicable to purchases at wholesale or retail. We must find the legislative intent, from the language of § 788, supra, interpreted in the light of the statute levying the sale tax, which exempts property purchased at wholesale by a bona fide licensed retailer for sale at retail.

█ Our conclusion and interpretation, therefore, is that the dominating leg-

islative intent was to *prevent evasion of the sale tax* levy by persons resident or engaged in business within Alabama by purchasing goods, chattels and other property outside of the State of Alabama at retail and bringing them into this state for use and consumption, regardless of the methods or means of transportation or the use to which they are applied. The levy of the tax attaches after the act of transportation ends and the property comes to rest in this state for use or consumption. 26 R.C.L. pp. 236, 237, § 209; Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596.

The insistence that the statute burdens interstate commerce or otherwise impinges the constitutions, state or federal, is therefore without merit. Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814; Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615, reversing, King & Boozer v. State, 241 Ala. 557, 3 So.2d 572.

The statute provides that the assessment made by the department of revenue is *prima facie correct,* and imposes on the appealing taxpayer the burden to "show that such assessment is incorrect" and further that, "The circuit court in equity, or the supreme court of Alabama on appeal to it may, if it be of the opinion *from all the evidence* that the assessment as made is either too high or too low, fix the amount of such assessment. The court shall hear such appeals according to its own rules and methods [of] procedure so far as practicable and shall decide all questions both as to the legality of the assessment and the amount thereof." [Italics supplied.] Code of 1940, Tit. 51, § 140.

■ It is clearly shown from the provisions of the statute that the question of "legality" and "amount" of the assessment to be determined here should be on appeal from a final decree of the circuit court, wherein such questions are presented and determined on the evidence adduced. State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 634, 11 So.2d 342; State v. Woods, 242 Ala. 184, 5 So.2d 732.

■■ This brings us to the consideration of the sufficiency of the allegations of the bill or their insufficiency some of which are suggested heretofore in the opinion. Taking its allegations as true, but construing them most strongly against the pleader, as must be done on demurrer, we are not of opinion that they meet and overcome the prima facie statutory presumption of the legality and correctness of the assessment and, therefore, the circuit court did not err in sustaining the demurrer. The decree allowed the complainant 20 days to amend, "if it be so advised."

Affirmed.

FOSTER, LIVINGSTON, and STAKELY, JJ., concur.

LAWSON and SIMPSON, JJ., concur in the result.