352 So.2d 1364 (1977)
Louis J. ROUSSEL
v.
Charles H. PAYNE, as Commissioner of Insurance of the State of Alabama, American Tidelands Life Insurance Company, Tidelands Capital Corporation.
Civ. 1171.
Court of Civil Appeals of Alabama.
September 14, 1977.
Rehearing Denied October 12, 1977.
*1365 Robert M. Alton, Alton, Leavell & Boggs, Montgomery, for appellant.
Charles H. Barnes, Asst. Atty. Gen., and Gen. Counsel, for State Dept. of Ins., appellee.
*1366 Charles M. Crook, Montgomery, and Drayton Nabers, Birmingham, for American Tidelands Life Ins. Co. and Tidelands Capital Corp., appellees.
HOLMES, Judge.
This is an appeal from an order of the Commissioner of Insurance for the State of Alabama.
The Commissioner approved a merger between American Tidelands Insurance Company (hereinafter ATL) and New American Tidelands Company (hereinafter New ATL) whereby ATL would become a wholly owned subsidiary of Tidelands Capital Corporation (hereinafter TCC). Pursuant to the merger, all the stock of ATL, except those shares owned by TCC, would be exchanged for the stock of TCC.
In July, 1976, ATL applied for approval of a "Joint Agreement and Plan of Merger" between TCC, ATL, and New ATL pursuant to Tit. 28A, § 541, Code of Alabama 1940 (1973 Cum.Supp.). By order dated July 27, 1976, the Commissioner set a hearing on ATL's application for August 16, 1976. The appellant, Louis J. Roussel, appeared at the hearing and argued insufficient notice of the hearing. Renotice of the proposed merger plan was given on November 22, 1976, and the hearing date was set for January 5, 1977. A hearing was held on that date and on March 7, 1977, the Commissioner entered his order approving the plan of reorganization and merger.
Thereafter, pursuant to Tit. 28A, § 47(2), Code of Alabama 1940 (1973 Cum.Supp.), Roussel appealed to the Circuit Court of Montgomery County on March 22, 1977. On April 28,1977, the circuit court affirmed the Commissioner's order in all respects. Appellant-Roussel then filed his notice of appeal to this court.
The jurisdiction and scope of review of this court is based upon Tit. 28A, § 47(5), Code of Alabama 1940 (1973 Cum.Supp.), as set out below, in pertinent part:
"The court shall reverse, vacate or modify the commissioner's decision or order in whole or in part if it finds that:
"(a) The commissioner erred to the prejudice of appellant's substantial rights in his application of the law; or
"(b) The decision or order was procured by fraud or was based upon a finding of facts contrary to the weight of the evidence; or
"(c) The commissioner's action was arbitrary or capricious."
The statutory scheme concerning mergers and consolidation of stock insurers reveals that no such merger or consolidation is to be effectuated until a plan and agreement has been filed with the Commissioner, approved by him in writing, and after a hearing of such merger. As set out above, this procedure was followed in this instance.
The Commissioner is to give approval to the plan within a reasonable time unless he finds the plan to be (1) contrary to the law, (2) inequitable to the stockholders of any domestic insurer involved, or (3) would substantially reduce the security of and service to be rendered to policyholders of the domestic insurer in this state or elsewhere. See Tit. 28A, § 541(2), Code of Alabama 1940 (1973 Cum.Supp.).
The appellant contends the trial court was in error in upholding the Commissioner's order because the merger is in violation of all three of the above standards set out in Tit. 28A, § 541(2), of the Code. More specifically, appellant argues:
1. The Commissioner was without authority to approve the merger of ATL with a corporation which is not a life insurance company nor one which was not in existence at the time approval was given.
2. The use of the merger had the effect of "squeezing out" the minority by forcing them to either accept stock in a noninsurance corporation or cash for the fair value of their stock.
3. The forcing of the minority shareholders to accept stock of TCC (alleged by appellant to be a "nonregulated, non-insurance corporation") or cash is not fair and equitable.
The tendency of the evidence reveals that as of November 19,1976, ATL had 1,044,679 *1367 shares of common stock issued and outstanding with 705,444 shares (67.5%) owned by TCC. TCC is a Louisiana holding company which holds the stock of ATL and Tidelands Data Systems (a small computer service company of which it has 100% control). The holdings which TCC has of ATL makes up 97% of its total assets. TCC is in turn controlled by Western Preferred Life Insurance Company which owns 2,747,147 (62.2%) of TCC's 4,415,073 shares outstanding. The appellant-Roussel is a minority shareholder of ATL, owning 9,294 shares (0.89%) of its common stock.
Under the terms of the "Joint Agreement and Plan of Merger," TCC would cause to be issued 2,289,836 shares of its authorized but unissued common stock which would be conveyed to ATL. A new Alabama life insurance company to be called New ATL Company would be formed. ATL would convey the 2,289,836 shares of TCC stock to New ATL Company and would pay over bonds in the amount of $2,000,000, with $1,000,000 to be used as the capital and a second $1,000,000 to be used as surplus for New ATL Company. The above transaction is in compliance with Tit. 28A, § 55(1), Code of Alabama 1940 (1973 Cum.Supp.), which sets out the minimum capital and surplus required to form a new domestic stock life insurance company.
New ATL Company would then be merged into ATL, bringing with it the $2,000,000 and the 2,289,836 shares of common stock of TCC. ATL then will exchange the 2,289,836 shares to TCC stock for the 339,235 shares of ATL stock owned by minority stockholders with the result being that the minority stockholders of ATL would become minority stockholders of TCC and ATL would become a wholly owned subsidiary of TCC.
In the order of the Insurance Commissioner, the plan of reorganization and merger was approved subject to New ATL meeting all financial and other requirements to become licensed as a life insurance company. The order further stated that "The issuance of a Certificate of Authority for New Tidelands Life Insurance Company will be considered evidence that all requirements have been met." On April 28, 1977, a certificate of authority was issued by the Insurance Department authorizing New ATL to engage in the business of insurance. Pursuant to the "Joint Agreement and Plan" between ATL and New ATL, the merger was consummated on May 3, 1977, after approval by the Board of Directors and shareholders of New ATL.

I
As to appellant's first contention, this court finds that the order of the Commissioner was not contrary to the law.
The Commissioner did not approve the merger of ATL with a noninsurance company, but instead, approved the merger subject to New ATL meeting the financial requirements of a life insurance company as set out in Tit. 28A, § 55(1). New ATL was to exist as an insurance company or else the approved merger would never take place.
Thus, the merger of ATL with New ATL was in conformance with Tit. 10, § 21(56)(10), Code of Alabama 1940 (1973 Cum.Supp.), set out in part below:
"[B]ut no corporation formed for the purpose of carrying on the business of banking or insurance shall consolidate or merge with any other corporation than corporations engaged in the business of banking or insurance or trust companies doing a banking business. . . ."
When the merger became effective on May 3, 1977, the merger was between ATL, an insurance company, and New ATL, also an insurance company, which is not contrary to the law. This court, considering Tit. 28A, § 541, can find no authority for the contention that New ATL must actually exist at the time approval is given to the merger. Put another way, we find nothing in the statute which prohibits the Commissioner from allowing an insurance company to merge with another insurance company, subject to the second insurance company becoming an approved insurance company. Clearly, in this instance, the Insurance Commissioner's order became effective *1368 only if New ATL became a life insurance company.
Appellant's contention that New ATL did not meet the requirements of the Alabama Insurance Holding Company Act has no merit in that New ATL was specifically exempted from such requirements by order of the Insurance Commissioner. Tit. 28A, § 556(9)(f)(2), Code of Alabama 1940 (1973 Cum.Supp.), is controlling since:
"(f) Exemptions.The provisions of this section shall not apply to:

. . . . .
"(2) Any offer, request, invitation, agreement or acquisition which the commissioner by order shall exempt therefrom as (i) not having been made or entered into for the purpose and not having the effect of changing or influencing the control of a domestic insurer, or (ii) as otherwise not comprehended within the purposes of this section."
As is clear from the evidence, control of the insurer will not change because TCC already owned 67.5% of ATL's stock which in itself amounts to total effective control. The provisions of § 556(6)-(19) are not applicable for an additional reason due to the fact that the merger had to be approved in a § 541 hearing and therefore the merger was not "comprehended within the purposes" of the Holding Company Act.

II
Appellant's second argument involves the contention that the majority stockholders are using a "phantom" corporation to squeeze out the minority shareholders. The crux of the matter is that there is no support for the argument, either by case law or statute, that whenever a newly formed subsidiary is created for the purpose of facilitating a merger the merger is illegal. See Grimes v. Donaldson, Lufkin & Jenrette, 392 F.Supp. 1393 (N.D.Fla.1974).
The reorganization between Tidelands Capital and American Tidelands involved what is known as a three-party merger whereby the parent of a partially-owned subsidiary creates a second subsidiary and the two subsidiaries merge. As a result thereof, the stock of the parent is issued to the minority shareholders of the first subsidiary. Such a three-party merger is expressly provided for in Alabama as set out in Tit. 10, § 21(65)(c), Code of Alabama 1940 (1976 Cum.Supp.):
"To effect such consolidation or merger, the board of directors of each constituent corporation shall, by resolution adopted by each such board, approve a plan of consolidation or plan of merger, setting forth

. . . . .
"(c) The manner and basis of converting the shares of the constituent corporations into shares or other securities or obligations of the new or surviving corporation or, in whole or in part, into cash or property or into shares, other securities, or obligations of any other corporation."
A provision of this type allows the shareholders of the merged corporation (ATL) to receive securities of some third corporation, such as stock of the parent of the surviving merged corporation (TCC). This was the procedure followed in the present case.
As to the aspect of appellant's contention that such merger was devised by the majority shareholders to freeze out the minority, this court can also find no merit to such argument. In all mergers or consolidations, it is common knowledge that some shareholders will be "frozen out" if the requisite majority agrees to adopt such plan of merger.
The Code of Alabama, in Tit. 10, § 21(66), (1973 Cum.Supp.), provides:
"The plan of merger or plan of consolidation shall be approved upon receiving the affirmative vote of the holders of at least two-thirds of the outstanding shares of each such corporation, . . ."
In every merger or consolidation, it is therefore axiomatic that some shareholders will be frozen out unless they all agree to such merger. Once the merger is approved by the requisite two-thirds vote of the shareholders, the minority can choose to *1369 either accept what is offered in the exchange as fixed by the merger agreement or dissent and assert rights provided for them in Tit. 10, § 21(73).
The fairness of the vote on the plan of merger is conclusive as evidenced by the record. TCC agreed to vote its stock in favor of the merger only if a majority of the minority stockholders voting at the meeting did so (and which an overwhelming majority did). Thus, the evidence tends to show that the minority shareholders were the ones who had the final voice as to the merger and it was not a scheme devised by the majority to freeze out the minority.
In some instances, the courts have disapproved mergers which "freeze out" minority shareholders. However, in these cases the courts have found the following factors to be present: (1) No corporation or business purpose for the merger other than eliminating the minority shareholders. (2) The merger was a cash merger (i. e., shareholders would have to accept cash and would have no further interest in the corporation). (3) The merger would result in the majority stockholders having 100% interest in the resulting corporation. See Bryan v. Brock & Blevins Company, Inc., 490 F.2d 563 (5th Cir. 1974), cert, den., 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1975); Marcou v. Federal Trust Company, 268 A.2d 629 (Sup. Jud.Ct.Me.1970).
This court, after careful review of the record, can find no evidence tending to show any "freeze out" of the minority shareholders. There was a valid corporate purpose in seeking the merger and reorganization (j. e., effect savings in the day to day operations of the two corporations and to prevent any potential claims of conflict of interest). See Grimes v. Donaldson, Lufkin & Jenrette, supra, at 1402. The evidence also tends to reveal that the minority shareholders of ATL will still have a stock and equity interest in ATL even though they receive stock of TCC. It is therefore not a cash merger. Finally, the shareholders of ATL will continue to have an interest in ATL through their holdings of TCC stock and thus the majority stockholders will not have a 100% interest in the resulting corporation. Following the standards of the above cases, the merger in the instant case did not freeze out the minority shareholders and in fact resulted in them holding a greater proportionate interest in ATL than they had before, due to the exchange ratio.

III
Appellant's last contention involves the argument that accepting the stock of TCC or, in the alternative, cash for the fair value of ATL stock was not fair and equitable treatment of the minority shareholders. Pursuant to the plan of merger and reorganization, the minority stockholders of ATL will receive 6.75 shares of TCC stock for each one share of ATL stock. The evidence further reveals that dissenting shareholders were given the option of trading in their ATL stock at $6.00 per share which was well above the market price of ATL stock at the time of the merger.
The undisputed evidence in the record points out that at the time of the hearing before the Commissioner, the market for TCC was $.65-$.80 and for ATL, $2.62-$3.12. The testimony of appellant himself reveals that, over the past two years, he has purchased stock of TCC at prices of $1.32-$1.38 per share. This in itself shows the relative market value of the stock of TCC and the fairness to the shareholders in the merger plan. The ratio of 6.75/1 thus resulted in ATL shareholders having stock with a greater market value following the reorganization than before.
Both of the plans offered in exchange for ATL stock resulted in a higher price than that guaranteed by Tit. 10, § 21(73), of the Code, which just assures dissenters "payment of the fair value of his shares." This court also notes that since over 97% of TCC assets are its holdings of ATL stock and because following the reorganization, TCC will own 100% of ATL, the character of the investment of ATL's shareholders did not change as a result of the reorganization. Their investment continued to be in ATL, but through a holding company.
*1370 In fact, the undisputed evidence at the hearing showed that the only dilution which resulted from the reorganization will be the dilution of control of Western Preferred Life over TCC.
As a result of the issuance of TCC shares pursuant to the reorganization, Western Preferred Life's percentage ownership of TCC's outstanding shares will be diluted from approximately 67% to 41%.
This court further notes the relative rights of the minority concerning actions by the majority shareholders as set out in Altoona Warehouse Co. v. Bynum, 242 Ala. 540, 545, 7 So.2d 497, 502 (1942):
"Those who embark in a corporate enterprise as stockholders do so under an implied agreement that the business shall be controlled and directed by a majority of the stockholders . . . ."
In this case, the majority of the minority voted to adopt the plan of merger and the dissenting shareholders were given several options as to the disposition of their ATL stock. However, the convincing and undisputed evidence reveals the dissenting shareholders were treated in a far more equitable manner than that specified in the statutes concerning dissenting shareholders' rights.
With the merger having been properly made in accordance with the applicable statutes and the minority shareholders being fairly and equitably provided for, this case is due to be and is affirmed.
The appellant-Roussel through able counsel has filed with this court a motion to strike appellee's brief. The basis of this motion is that certain portions of appellee's brief contain matters dehors the record. This court in this instance, as in all instances, only considers relevant matters as shown by the record. The motion is therefore denied.
AFFIRMED.
WRIGHT, P. J., and BRADLEY, J., concur.
HOLMES, Judge.
The appellant-Roussel, in brief in support of his application for rehearing, contends that this court's statement that, "When a merger became effective on May 3, 1977, the merger was between ATL, an insurance company, and New ATL, also an insurance company, which is not contrary to the law.", is based on matters dehors the record. We do not agree. Motions filed in this court by appellant-Roussel clearly reveal that the merger, as set out in our opinion, did occur on May 3, 1977. However, in any event, whether the merger occurred then, or later, or not at all is immaterial to the issues as previously decided.
OPINION EXTENDED. APPLICATION FOR REHEARING OVERRULED.
WRIGHT, P. J., and BRADLEY, J., concur.