**DAVID J. GREENE & CO. et al., Plaintiffs,**

**v.**

**SCHENLEY INDUSTRIES, INC., et al., Defendants.**

Court of Chancery of Delaware, New Castle.

June 15, 1971.

[redacted]

[redacted]

[redacted]

[redacted]

Irving Morris of Cohen, Morris & Rosenthal, Wilmington, and Julius Levy of Pomerantz, Levy, Haudek & Block, New York City, for plaintiffs.

S. Samuel Arsht of Morris, Nichols, Arsht & Tunnell, Wilmington, and Leon Silverman of Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant Glen Alden Corporation.

Louis J. Finger, of Richards, Layton & Finger, Wilmington, for defendant Schenley Industries, Inc.

MARVEL, Vice Chancellor:

The complaint herein, which was filed on March 5, 1971, seeks a preliminary and final order enjoining the consummation of a contemplated plan of merger proposed to be effected under the terms of 8 Del.C. § 251. It is claimed in the complaint that such projected merger is so grossly unfair to plaintiffs and other minority stockholders of the defendant Schenley that it must be enjoined as being an attempt by self-dealing officers and directors improperly to eliminate to a large extent the equity of minority stockholders to the corresponding advantage of the defendant Glen Alden.

On or before February 25, 1971, the defendant Glen Alden, the holder of approximately 86% [1] of Schenley's common stock and in complete control of such subsidiary by reason of its selection of Schenley's directors and officers, conceived of a plan for the merger of the defendant Schenley (for whose benefit plaintiffs sue derivatively as well as representatively as minority stockholders of Schenley) into a subsidiary of the defendant Glen Alden. Plaintiffs contend that such proposed merger is being undertaken for the benefit of the defendant Glen Alden at the expense of plaintiffs and other minority stockholders of Schenley. A detailed description of the plan under attack is set forth in a proxy statement [2] mailed out to Schenley's stockholders as of May 21, 1971, preliminary to Schenley's annual meeting of stockholders which is scheduled to be held on June 17, 1971. Following the filing of the complaint, plaintiff filed interrogatories and two requests to produce, dated March 12, 1971. However, discovery was not pressed and the case remained inactive until June 3 when plaintiff's present motion was noticed for argument on June 9.

The plan, as described in the complaint and in the later proxy statement, proposes to furnish to Schenley's minority stockholders who accede to the proposed merger $5 in cash and a 7½% 15 year subordinated debenture in the principal amount of $30 for each share of common stock, and $4.50 in cash and a similar debenture in the

1. In point of fact Glen Alden's total voting power in the affairs of Schenley is only approximately 84%, there being other classes of stock with voting rights.

2. A reading of such statement indicates that plaintiffs' advance information concerning the proposed plan under attack, as incorporated into their March 5 complaint, was substantially correct.

principal amount of $27 for each share of $1.40 preferred stock. These debentures are to be subordinated to all senior and superior indebtedness, however, no cash dividends may be paid on Glen Alden's common stock during the continuance of an event of default under the trust indenture. The parties agree that the $1.40 preferred stock of Schenley has a value of 9/10ths of the Schenley common stock, and the amount proposed to be paid to the preferred shareholders is based on such difference in valuation.

It is charged in the complaint that after an appropriate discounting of the speculative debentures involved in the plan, the total fair market value of the offer made to minority stockholders of Schenley would be $28 per share for each share of their common stock and $25 per share for each share of their $1.40 convertible preferred stock. Schenley's common stock has been recently traded on the New York Exchange at between $27–$29 per share. During the worst of the 1970 market break Schenley's common stock declined to a low of $19.50. The market price of Schenley's convertible preferred stock has moved in close correlation with that of its common stock taking into consideration its valuation at 9/10ths of the common stock. The preferred stock 1970 low was $17.25. Schenley's preference stock is not affected by the plan of reorganization.

The complaint lays particular emphasis on the estimated value of the proposal made to Schenley's minority stockholders as compared with the much higher prices bid for Schenley stock in 1968, when Glen Alden and Lorillard, battling for control of Schenley, drove up the price of its stock beyond what defendants deem normal market levels. Plaintiffs also point out that a consummation of the plan would mean that the estimated $15 per share interest in Schenley's Buckingham Corporation, which they and other minority stockholders of Schenley might expect to receive were the plan of merger not to be consummated, would be denied them, such sum being the calculated pro rata amount allocable to each share of stock of Schenley from the $120,000,000 derived from the sale of Schenley's merged subsidiary, Buckingham Corporation, which has been required by an anti-trust consent decree. Finally, it is alleged that the monetary value of the offer made to Schenley's minority stockholders represents a price earnings ratio of nine times such corporation's present earnings, a formula for earnings far below that of Schenley's principal competitors in the liquor industry.

Plaintiffs' prayers are for preliminary and permanent injunctive relief against effectuation by the defendants and their agents of the contemplated merger of which plaintiffs complain, and the matter for decision by the Court is plaintiffs' pending motion for a preliminary injunction against such plan's immediate effectuation following stockholder approval at the meeting to be held on June 17, at which Glen Alden, unless enjoined, will have far more than the required number of votes to insure the adoption and effectuation of the plan in controversy. This is the opinion of the Court on said motion.

Glen Alden concedes that its control of the affairs of Schenley, including the naming of its directors and officers, is such as to call into play the rule applicable in all instances of corporate self-dealing, namely that when officers and directors stand on both sides of a transaction complained of " * * * they bear the burden of establishing its entire fairness, and it (the transaction) must pass the test of careful scrutiny by the courts", Sterling v. Mayflower Hotel Corp., 33 Del.Ch. 293, 93 A.2d 107, citing Keenan v. Eshleman, 23 Del.Ch. 234, 2 A.2d 904, and Gottlieb v. Heyden Chemical Corp. 33 Del.Ch. 82, 90 A.2d 660.

In the opinion below in Sterling v. Mayflower Hotel Corp., supra (33 Del.Ch. 20, 89 A.2d 862), the Chancellor noted in a situation involving the exchange of stock

of the resulting corporation for that of the corporation to be merged:

"I conclude that all relevant value figures of both corporations may be examined and compared in order to arrive at a decision as to the fairness of the plan. Thus, while not determinative, nevertheless, the value of each corporation for various purposes, e. g., going concern value, book value, net asset value, market value, is pertinent to the issue presented."

In the case at bar, however, cash and a debenture of Glen Alden rather than its common stock are being tendered for each share of Schenley proposed to be eliminated by the contemplated merger. Thus the matter to be decided is the fair value of the offer being made to plaintiffs and other minority stockholders of Schenley and whether or not this amount approximates the fair value of the shares of Schenley which the plan proposes to eliminate.

While the complaint, as noted above, gives a higher value to the Glen Alden offer, plaintiff's expert, Lawrence J. Goldstein, by valuing the debentures in question at 70% of their face value, arrives at a value of $26 for each share of Schenley common stock, and $23.40 for each share of Schenley convertible preferred. Defendant's expert, CBWL–Hayden, Stone, Inc., values the offer for common stock at between $28–$29, and for the preferred at between $26–$27, while its expert, Stanley S. Shuman, is of substantially the same opinion. Thus, unless the fair value of Schenley stock is so much greater than the total amount offered, or that plaintiffs and other minority stockholders are being otherwise deprived of clear rights or otherwise so taken advantage of by those charged with a fiduciary duty towards them as to constitute a form of constructive fraud, or the like, then it would appear that the parties are merely in dispute as to value, for which an appraisal should be adequate. Compare Stauffer v. Standard Brand Corporation, 41 Del.Ch. 7, 187 A.2d 78.

First of all, I am satisfied that self-dealing officers and directors of Glen Alden agreed on the basic terms of the reorganization plan here under attack and that the approval of Allen & Company, Incorporated was furnished, as it were, ex post facto, and because of close business relations between such bankers and those in control at Schenley such analysis cannot be deemed to be in any degree impartial. Compare Bastian v. Bourns, Inc. (Del.Ch.) 256 A.2d 680, aff'd (Del.Supr. Ct.), 278 A.2d 467.

Schenley, which was incorporated in 1933, has been since engaged in the production, importation and sale of alcoholic beverages. It has been principally involved for 38 years in the production and sale of bourbon and blended whiskies, although it is the sole importer, under a three year franchise which has been renewed at regular intervals to date, of Dewars Scotch whiskey. In 1964, it acquired a controlling interest in Buckingham Corporation and thus gained the exclusive right to import Cutty Sark, one of the most popular imported whiskeys in this country. However, as the result of the entry of a consent decree following the filing of an anti-trust complaint against defendant, it has divested itself of its interest in Buckingham, and thus lost its Cutty Sark franchise. Thus, while Scotch whiskey continues to grow in popularity in the United States along with Canadian whiskey, gin and vodka, the anti-trust decree above referred to prohibits Schenley from acquiring a franchise for the importation of any brand of Scotch whiskey, other than Dewars, under the short term franchise above referred to, which means that Schenley must depend on its large reserves of aged bourbon and blended whiskies, the popularity of which appears to be waning, in order to continue to make money, while confronted with the fact that its competitors, Seagrams, Hiram Walker, National Distillers, Heublein, and Brown-Forman all had more leading brands (selling in excess of 1,000,000 cases or more per annum) than Schenley.

Turning to plaintiffs' attack on the overall fairness of the plan, it is first of all contended that the proposed exchange of Schenley stock for debentures is a forced downgrading of the quality of the common stockholders' original investment by the substitution of cash and speculative debentures for such stock. It is next pointed out that the proposed exchange will be taxable to the stockholder, that the price fixed for shares of Schenley common is inconsistent with its 1968 prices, and finally that based upon factors such as growth of revenues and earnings, expected future growth, dividend record, return on investment, and book value, that Glen Alden has grossly undervalued the shares of Schenley here involved. In short, plaintiffs contend that based on comparisons of common financial elements of six comparable liquor industry companies, the Schenley common shares here involved should be valued at $46.73 per share, based on an average price-earnings ratio, $66.98 based on average dividend yield, and $54.19 based on an average ratio of market to stated book value adjusted for the recent sale of Buckingham and Schenley's domestic wine business.

Plaintiffs make pains-taking analyses of the seven companies involved to establish to their satisfaction that the current market value of Schenley stock is clearly and substantially below its fair value, as evidenced by the low ratios of market price to earnings, dividends, and asset value as compared with the same ratios for shares of stock of the six other selected companies engaged in the alcoholic beverage industry. Schenley is also compared favorably to the other six in areas of dividend yields and growth in revenue, pre-tax income, and earnings per share.

However, as noted in Bastian v. Bourns, supra, there is no exact method of fixing the precise value of securities. First of all, book value is largely ignored by the investor as a guide to fair value. On the other hand, market price, when it can be established by free trading in an open forum, is, in my opinion, the most significant element to be taken into consideration in reaching a judgment on the overall fairness of a corporate merger. It is the element which, on the whole, most attracts the attention and interest of the average investor, and is a reality of the financial world which has recently been taken into consideration by the Delaware Legislature.

During 1970 and the latter months of 1969, Schenley stock did not trade on the New York Stock Exchange for more than $28 a share. During the period of 1960–1966, the prevailing prices for Schenley ranged between $15 and $25. The Schenley prices for portions of 1967 and for all of 1968 were distorted by the competing take-over proposals of Glen Alden and of Lorillard. Schenley's issued shares having returned to their precontest market values of the early 1960's, by late 1969 and throughout 1970, a public judgment as to the value of Schenley appears to have been reached, namely a price per share which closely approximates the value placed by the litigants on each such share in the exchange which is proposed to be made here for the shares of plaintiffs and other minority stockholders of Schenley.

As to earnings, both past and projected, it must be noted that during 1970 the earned net income of Buckingham Corporation represented 32% of Schenley's total net income. Now that Buckingham has been sold as a result of court decree, and Schenley is barred from seeking to acquire any additional brands of Scotch whiskey, it must principally depend for earnings on its slower-moving bourbons and blended whiskies. The price earnings ratios projected on such basis are in line with Schenley's historical ratios (except for the period of contest between Glen Alden and Lorillard), the same being, in my opinion, the market's estimate of Schenley's comparatively limited potential for future growth in its field, a reflection which also includes a recognition that Schenley's 1969 and 1970 increases in earnings are to a substantial extent attributable to Schenley's recent reduction of overhead, a factor which cannot be

expected to recur annually. This estimate is made despite what has been said in periodic glowing reports of Schenley's prospects because, notwithstanding the regulations imposed by the Securities and Exchange Commission, it is almost mandatory for aggressive management to see the silver lining in the bleakest financial sky and indulge in blatant puffing.

And while it must be conceded that the quoted market prices of Schenley stock have on the whole been surprisingly low over recent years compared to the prices of the stock of its immediate competitors (except during the Glen-Alden-Lorillard contest) when measured by the factors usually employed to arrive at fair value, the opponents of the merger here in issue fail, in my opinion, to give proper consideration to the basic reality of Glen Alden's control of Schenley. Thus, while plaintiffs point to such economic fact as one conducive to depressing the value of Schenley's stock, they fail to recognize that under the law of merger each minority stockholder of Schenley has had at least constructive notice that he may be lawfully eliminated as such a stockholder unless the plan of corporate reorganization designed to absorb his stock interest is so grossly unfair as to be invalid. In short, I am of the opinion that the rights of plaintiffs and of other minority stockholders of Schenley, viewed in the light of Glen Alden's holding of approximately 84% of the common stock of Schenley, are no greater under the present Delaware merger statute here involved (8 Del.C. § 251) than under the so-called short-merger statute (8 Del.C. 253). Thus, if plaintiffs and others are not satisfied with the value placed on their shares by Glen Alden, and no fraud or blatant overreaching is demonstrated, their recourse is to an appraisal, Stauffer v. Standard Brand, supra. Compare Bruce v. E. L. Bruce, 40 Del.Ch. 80, 174 A.2d 29.

Turning to plus elements in the plan under attack which are clearly beneficial to the interests of the minority stockholders, it should be noted that in the event a cost basis exists for Schenley stock higher than the value of the exchange offer, a capital loss can be taken.

Next, interest on the debentures is set at $2.25 as opposed to the $1.40 dividend per share paid through 1970, and this does not take into consideration the investment use to be made of the $5 cash provided per share in the plan.

Finally, in the light of the history of Schenley's 6% debentures, I am of the opinion that the debentures here in issue should be valued at 80% per face value rather than 70% thus giving a value of $29 to the common stock offer and $26.10 to that made to holders of preferred stock.

Plaintiffs contend, however, that the ruling of the Chancellor in Greene & Co. v. Dunhill (Del.Ch.) 249 A.2d 427 requires the entry of a preliminary injunction. The answer to this contention is found, in my opinion, in two factors found in the cited case and not in the case at bar, one the history of a seizure of a corporate opportunity from Spaulding by Dunhill, and secondly, the drastic reduction in the pro forma earnings of Spaulding which would have been brought about were the contemplated merger to have been consummated.

A preliminary injunction will not issue unless the moving party satisfies the Court that there is a reasonable probability of his ultimate success on final hearing, Allied Chemical & Dye Corporation v. Steel & Tube Co. of America, 14 Del.Ch. 64, 122 A. 142. Such ruling, in my opinion, is applicable to the case at bar. Furthermore, an injunction will never issue simply because it may do no harm pending final hearing, Danby v. Osteopathic Hospital, 34 Del.Ch. 172, 101 A.2d 308, aff'd 34 Del. Ch. 427, 104 A.2d 903, and here, of course, defendants contend that any delay in the carrying out of the proposed exchange would be financially damaging and inappropriate in a situation in which plaintiffs merely hope to gain more for their shares of Schenley than Glen Alden has offered.

In other words, plaintiffs have not shown that they will be irreparably damaged if an injunction does not issue in that their relief clearly lies in an appraisal proceeding.

While a court of equity should stand ready to prevent corporate fraud and any overreaching by fiduciaries of the rights of stockholders, Bennett v. Breuil, 34 Del. Ch. 6, 99 A.2d 236, by the same token this Court should not impede the consummation of an orderly merger under the Delaware statutes, an efficient and fair method having been furnished which permits a judicially protected withdrawal from a merger by a disgruntled stockholder, Mac Farlane v. North American Cement Corporation, 16 Del.Ch. 172, 157 A. 396. Finally, plaintiffs' delay in seeking injunctive relief clearly militates against their right to seek equity were they otherwise entitled to the relief sought, Cottrell v. Pawcatuck Co., 34 Del.Ch. 528, 106 A.2d 709.

On notice, an order may be submitted denying plaintiffs' application for a preliminary injunction as prayed for.