**C. L. GRIMES, Plaintiff,**

v.

**DONALDSON, LUFKIN & JENRETTE, INC., Meridian Investing & Development Corporation, et al., Defendants.**

**Civ. A. No. 74–59.**

United States District Court,
N. D. Florida,
Tallahassee Division.

July 15, 1974.

C. L. Grimes, pro se.

John C. Ausley, Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, Fla., for plaintiff.

Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, Fla., Turk, Marsh, Kelly & Hoare, New York City, for defendant Meridian Investing.

Ervin, Varn, Jacobs & Odom, Tallahassee, Fla., David, Polk & Wardell, New York City, for defendant Donaldson, etc.

MIDDLEBROOKS, District Judge.

## PRELIMINARY STATEMENT OF ACTION

This action was commenced under the Securities Exchange Act of 1934, as amended, Title 15, U.S.C.A., § 78a et seq, and jurisdiction is invoked pursuant to § 27 of the Act, Title 15, U.S.C.A. § 78aa, and the principles of pendent jurisdiction. Plaintiff brings this action individually and derivatively on behalf of Meridian Investing and Development Corporation ("Meridian").

*Proceedings to Date*

Plaintiff C. L. Grimes seeks, inter alia, to permanently enjoin defendant Meridian and any subsidiary or affiliate of Meridian from merging with defendant Donaldson, Lufkin & Jenrette, Inc. ("DLJ") or any subsidiary or affiliate of DLJ, specifically DLJ Real Estate, Inc. (DLJRE), a wholly owned subsidiary. By order of this Court on April 25, 1974, plaintiff's motion for a preliminary injunction was denied.

Plaintiff subsequently moved pursuant to Rule 65(a)(2) for a rehearing on his preliminary injunction motion and an expedited trial on the merits of the complaint for injunctive relief. This motion was granted and trial on the merits on all issues raised in the complaint upon which plaintiff's request for injunctive relief is based was held on May 16 and 17, 1974, at which time the Court heard testimony and received evidence. On May 17, 1974, at the conclusion of the trial the Court announced in open court that plaintiff's motion for a rehearing on his motion for a preliminary injunction was denied but reserved decision on the request for a permanent injunction.

*The complaint*

Plaintiff's 53 page complaint alleges that DLJ acted improperly in acquiring 57% of the outstanding stock of Meridian through tender offers in May and September of 1973. Plaintiff alleges that DLJ failed to disclose inside information in connection with the May and September tender offers, that DLJ and Meridian had a duty to disclose at the time of the May and September tenders that a merger under Delaware law with the minority shareholders of Meridian receiving cash was a possibility, that DLJ had an intention which it failed to disclose to acquire all the stock of Meridian, that filings made with the Securities and Exchange Commission were deficient in various respects, that the 1973 Proxy Statement sent to Meridian shareholders was false and misleading, that Meridian has failed to pursue certain claims against former Meridian employees, that DLJ has misappropriated Meridian's corporate opportunity to purchase its own shares and that Meridian has been charged excessive amounts for services rendered to it by DLJRE and Meridian has not been compensated for services rendered to DLJRE. Plaintiff further alleges that the proposed merger between a subsidiary of DLJRE and Meridian is a sham and has no business purpose.

Defendants Meridian and DLJ filed an answer denying all plaintiffs' allegations of improper conduct.

Having considered the pleadings, exhibits, stipulations, evidence and argument of counsel before the Court in this cause, having considered the demeanor of the witnesses who have testified and having resolved as trier of fact the credibility choices to be made, this Court makes the following findings of fact and conclusions of law as required by Rule 52(a), Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1. Plaintiff C. L. Grimes owns 3,800 shares of Meridian common stock and has held these shares since the first public offering of Meridian shares in 1969. [Grimes *].

2. The defendant DLJ is a Delaware corporation with headquarters in New York. Through its various subsidiaries DLJ is engaged primarily in the securities business. It also has subsidiaries engaged in other businesses including real estate.

The stock of DLJ is publicly traded on the New York Stock Exchange. George C. Gould ("Gould") is Vice Chairman of the Board of Directors and Executive Vice President of DLJ and is on the Board of Directors of DLJRE and Meridian. [Gould; Harwood; Plaintiff's Exhibit 2C; 9].

3. DLJRE, a wholly owned subsidiary of DLJ, is a Delaware corporation with its headquarters in New York. DLJRE conducts business through a number of subsidiaries which are involved in various facets of the real estate industry, both on the financial and the development side. The President and Chief Executive Officer of DLJRE is Anthony H. Harwood ("Harwood") who has also been on Meridian's Board of Directors since June 27, 1973. [Harwood; Plaintiff's Exhibit 9; 12(c)].

4. The defendant Meridian is a Delaware corporation formed in 1969 as an investment company under the provisions of the Investment Company Act of 1940. Initially in that capacity it was only involved in passive investments in real estate related securities with respect to which it had no operating responsibilities. In the fall of 1971, with shareholder consent a decision was made to seek deregistration as an investment company and for it to become more actively involved in managing its real estate operations. It now operates as a multiregional land developer and builder and marketer of residential housing. Meridian continues to manage the part of its portfolio of real estate investments acquired when it was an investment company. Following deregistration a plan was adopted to sell such assets and reinvest the proceeds thereof and certain of these assets have been sold. DLJRE presently owns approximately 1,200,000 shares of Meridian with the remaining 900,000 shares distributed among over 1,000 public shareholders. Charles J. Kelly, Jr. ("Kelly") is President and Chief Executive Officer of Meridian and is on its Board of Directors. Kelly owns 3,300 shares of Meridian. [Kelly; Harwood; Plaintiff's Exhibit 9].

5. In Mid 1972, Kelly was authorized by Meridian's Board of Directors to carry into effect various plans which he proposed at that time, one of which was to seek an invester which would be interested in making a substantial investment in Meridian through the purchase of its stock and in supporting Meridian in its affairs. It was Kelly's hope that the new invester would act as a stabilizing effect upon the market price of Meridian's stock and permit Meridian to take decisive action to make the company profitable. Among the institutional investers contacted by Kelly was American Express Company which owns 25% of the outstanding stock of DLJ. American Express stated that it was not inter-

* References in brackets are to the testimony of the witnesses at trial and the exhibits introduced in evidence which support the proposed finding.

ested in making a substantial investment in Meridian but suggested that DLJ might be. [Kelly; Plaintiff's Exhibit 9].

6. Subsequently Harwood met with Kelly and discussed the possibility of DLJ purchasing a substantial amount of stock in Meridian. Kelly looked with favor on such a possibility. After a series of discussions and a review of Meridian's operations both Harwood and Kelly were of the opinion that with the assistance which DLJ could supply as a substantial shareholder, including its contacts within the financial community and the use of experienced personnel in DLJRE to assist Meridian in its future operations, Meridian's earnings would improve and that this in turn would increase the price of Meridian stock. [Kelly; Harwood].

7. When the proposal of DLJ making a substantial investment in Meridian was presented to the DLJ Board of Directors it did not meet with unanimous approval. Of DLJ's nine man Board of Directors seven were from the securities end of its business and there was no representative from DLJRE on the Board. William H. Donaldson, Chairman of DLJ and its Chief Executive Officer was opposed to DLJ making a substantial investment in the housing business and felt that DLJ should concentrate instead on its securities business. Eventually Mr. Donaldson and others agreed to a substantial investment in Meridian but insisted that the investment be less than 50% of the total outstanding stock. The 50% figure was significant because if DLJ acquired more than 50% of the Meridian stock, under generally accepted accounting procedures it would have had to consolidate Meridian's financial statements into the DLJ statements. This would have meant that all of Meridian's assets and liabilities would have appeared on DLJ's balance sheet and all of Meridian's revenues and costs would have appeared on DLJ's income statements. Although Meridian had not in recent years been a profitable company,

it did have substantial assets, liabilities and revenues which would have had a substantial impact upon DLJ's financial status. [The effect can be seen by comparing DLJ's 1972 financial statements with its 1973 financial statements as set forth in the 1973 DLJ Annual Report (Plaintiff's Exhibit 2–C)]. Mr. Donaldson and other directors felt that such a consolidation would seriously change the appearance of DLJ to the financial community and its stockholders and distort the image of DLJ as a securities firm. It was felt that no such distortion would result if less than 50% was acquired since in that case it was necessary only to report the income from DLJ's stock ownership in Meridian on a single line of its income statement. See DLJ statement of earnings for the period ending 6/30/73, Plaintiff's Exhibit 2–A. [Gould; Harwood].

8. On April 30, 1973, DLJ's Board of Directors approved the proposed investment in Meridian. On the same day DLJ presented its proposal to tender for less than 50% of the outstanding stock of Meridian to the Meridian Board of Directors, none of whom were affiliated with DLJ or any of its affiliates or subsidiaries. The Meridian Board unanimously passed a resolution stating that "in view of the reputation and resources of Donaldson, Lufkin & Jenrette, Inc., the Corporation should benefit therefrom in connection with its future business activities if Donaldson, Lufkin & Jenrette, Inc. were to acquire a significant interest in the Corporation; . . . ." [Plaintiff's Exhibit 12–B].

9. On May 1, 1973, Meridian transmitted DLJ's Offer to Purchase to the Meridian shareholders. The offering price was set at $7.00 per share. [Plaintiff's Exhibit 1–M]. On April 27, 1973, the last full trading day prior to the announcement by Meridian of the negotiations with DLJ leading to the tender offer, the representative bid for Meridian common stock was $4.75. During the months of March and April and prior to the announcement the price for

Meridian stock had ranged from a low bid price of $4.75 per share to a high of $5.80 per share. [Gould; Harwood; Plaintiff's Exhibit 9; DLJ Exhibit 3].

10. Kelly's May 1, 1973, letter on behalf of the Meridian Board of Directors transmitting the Offer to Purchase to the Meridian shareholders stated that the Board "has concluded that the reputation and resources of DLJ in the capacity of a substantial shareholder should be beneficial to the company and its affairs" and included certified audited financial statements for Meridian and its subsidiaries for the two years ending December 31, 1972. The letter also stated that on December 31, 1972, the book value of Meridian's shares was $12.85. [Plaintiff's Exhibit 1–S].

11. The May tender offer was successful and DLJ acquired approximately 1,000,000 shares of Meridian at the $7.00 per share price. The shares acquired constituted approximately 48% of the Meridian shares outstanding. [Plaintiff's Exhibit 1–P].

12. At the time of the May tender offer DLJ had no intention of acquiring more than 50% of the Meridian shares outstanding or effectuating a merger between Meridian and DLJ or any subsidiary or affiliate thereof. DLJ did not make any commitment, however, that DLJ would never acquire any further shares or effect a merger with Meridian and the possibility of a later merger was mentioned in the tendering materials sent to Meridian shareholders. [Gould; Harwood; Plaintiff's Exhibit 1–M and 25].

13. At the time of the May tender offer DLJ was not in possession of any material favorable information concerning Meridian that had not been disclosed to the public.

14. Following the May tender offer, Harwood and James McMahan ("McMahan"), Executive Vice President of DLJRE and others from DLJRE in close cooperation with Kelly and others at Meridian devoted substantial time and effort toward improving Meridian's performance, securing adequate financing, selling certain investments at a profit and strengthening Meridian's controls over its financial affairs.

15. Included in these efforts were transfer of employees from DLJ to Meridian and the use of DLJ's influence in obtaining two loans to Meridian totaling $42,000,000.

16. The evidence presented to the Court refuted plaintiff's claim that DL JRE has "looted" Meridian, "embezzled" any of its funds or otherwise enriched itself at the expense of Meridian. DL JRE employees including Harwood and McMahan made a significant positive contribution to Meridian's business and were a substantial factor in Meridian's ability to show a profit in 1973. [Kelly; Harwood; Plaintiff's Exhibit 2–C].

17. Meridian was billed by DLJRE only for the pro rata portion of the salaries paid by DLJRE to Harwood, McMahan and Schilkoff and was billed nothing for the time of other employees of DLJRE who also assisted Meridian. The portions of the salaries charged to Meridian were based on the proportion of the overall time that Harwood, McMahan and Schilkoff devoted to Meridian. The amount billed to it for these and other services later in 1973, was just under $100,000. To date DLJRE has only been paid $5,000 of this amount. The testimony is undisputed that if negotiated at arm's length, the compensation for the services provided by Harwood and McMahan to Meridian would have been at least $300,000. [Harwood; Kelly].

18. In August of 1973, on the basis of his experience with Meridian, its personnel and its future outlook, Harwood was of the opinion that the investment was a good one and that a further investment by DLJ in Meridian would be desirable. Harwood also felt that there were psychological advantages in owning more than half of the stock of the company which would give him greater authority in his efforts to im-

prove Meridian's profitability [Harwood; Plaintiff's Exhibit 17].

19. Harwood presented his proposal to acquire additional stock to the DLJ Board of Directors along with his reasons for acquiring the additional shares. By the time that Harwood made his presentation to the DLJ Board, opposition to acquiring over 50% of Meridian had lessened, principally because Mr. Donaldson had by then started discussions which shortly thereafter led to his leaving the firm and others felt that with their increased familiarity with Meridian and its potential for future profitable operations, consolidation for financial statement purposes would be acceptable. [Gould; Harwood].

20. On September 7, 1973 DLJ made a tender offer for up to 200,000 shares of Meridian's stock at $7.00 per share. On September 6, 1973, the last full trading day before the public announcement of the tender offer, the representative bid quotation for Meridian common stock was $4.50. [Plaintiff's Exhibit 1(P), and 9].

21. On September 12, 1973, Kelly wrote to the Shareholders of Meridian enclosing financial statements showing earnings for the six months ending June 30, 1973, of $1,530,000 and an increase in book value to approximately $13.59 per share. [Plaintiff's Exhibit 1–P]. The tender offer was successful with DLJ acquiring approximately 198,000 shares. Subsequent to the tender DLJ owned approximately 57% of Meridian common stock. DLJ later transferred all of these shares to DLJRE. [Plaintiff's Exhibit 9].

22. There is no evidence that at the time of the September tender offer DLJ had an intention of merging Meridian with an affiliate or subsidiary of either DLJ or DLJRE. The testimony, which I accept, is uncontradicted that DLJ did not have any such intention. [Gould; Harwood; DLJ Exhibit 1, ¶1].

23. At the time of the September tender offer DLJ was not in possession of any material favorable information concerning Meridian that was not disclosed to the public.

24. Subsequently, due to both a lack of market response to favorable press releases and a request by Mr. Ira Berne for DLJ to purchase his 100,000 shares of Meridian, Harwood and McMahan came to the conclusion that DLJ's original concept of investment in Meridian should be changed. Originally, DLJ had planned to purchase Meridian stock as an investment and through the use of DLJ's personnel and managerial skills, drive the market price of Meridian's stock up thereby realizing a profit. It became apparent that because of the state of the economy, the energy crisis and other factors adversely affecting the price of housing company stocks, DLJ's investment in Meridian should be of a more permanent nature to allow DLJ to benefit from Meridian's earnings as reflected in the increased price of DLJ stock. [Kelly; Gould; Harwood].

25. The necessarily more permanent nature of the involvement with Meridian made DLJ's management aware of possible conflict of interest problems. These conflict of interest problems were of two kinds. First, any allocation of business opportunity between DLJRE and Meridian could be questioned by shareholders of the two corporations, depending on whether the business opportunity was profitable or not. Second, there would be conflict of interest problems in the allocation of managerial personnel and the price to be charged for their services. Again this allocation could be the source of continued problems raised by either Meridian or DLJ shareholders. [Kelly; Gould; Harwood].

26. In order to deal with these serious conflict of interest problems it was proposed that Meridian merge with a wholly owned subsidiary of DLJRE with the minority stockholders receiving the fair value in cash for their stock. The effect of the merger would be the consolidation of the real estate operations

of DLJRE and Meridian. [Kelly; Gould; Harwood].

27. By consolidating the operations of DLJRE and Meridian it was also felt that substantial duplication of expense would be avoided and that savings of more than $300,000 per year to the consolidated enterprise could be effectuated. [Gould; Plaintiff's Exhibit 9, p. 13]. These savings will occur due to a reduction in salaries, legal and accounting expenses as well as savings in franchise taxes, stock transfer fees, public relations expense, directors' fees and the ability of DLJRE to utilize certain tax losses on New York State and City income taxes that Meridian could not use. [Kelly; Harwood; DLJ Exhibit 2].

28. W. E. Hutton & Company ("Hutton"), an independent investment banking firm with wide experience in evaluating real estate securities, was retained to evaluate the stock of Meridian, determine the fair and equitable price for Meridian's stock in the hands of Meridian's stockholders and report its conclusions to the Board of Directors of Meridian. After extensively reviewing Meridian's financial statements, prior earnings history and operations, the price at which Meridian's stock had previously traded, discussions with management, recent appraisals concerning certain of Meridian's assets, the outlook for the housing industry and comparisons with comparable real estate companies, Hutton determined the fair and equitable value of Meridian's shares to be $5.50 per share. [Harwood; Plaintiff's Exhibit 22; DLJ Exhibit 3].

29. On February 1, 1974, after communicating DLJ's proposal to merge Meridian's operations with those of DLJRE to Kelly, DLJ issued a press release indicating that the price to be paid to Meridian's shareholders pursuant to the proposed merger would be $7.50 per share. On January 29, 1974, the last full trading day before the public announcement of the proposed merger, the representative bid for Meridian common stock was $4.25. [Plaintiff's Exhibit 3 and 9].

30. Subsequently, as a result of discussions with representatives of General Electric Company whose employee pension funds owned over 200,000 shares of Meridian stock, DLJ's initial offer of $7.50 was increased to $8.50. [Harwood; Plaintiff's Exhibit 4 and 9].

31. On March 14, 1974, the Meridian Board of Directors unanimously determined that the fair value of Meridian's shares was not in excess of $8.50 per share and recommended the merger proposal to Meridian shareholders. [Kelly; Harwood; Plaintiff's Exhibit 12-F].

32. Plaintiff offered no evidence at trial in the nature of expert testimony or opinion evidence contradicting the opinions of the Meridian Board of Directors and Hutton that the price of $8.50 per share to minority stockholders was fair to the minority shareholders of Meridian. I accordingly conclude that the price offered to the minority shareholders of Meridian is fair and equitable.

33. Following a meeting of the DLJ Board of Directors in February at which certain Directors expressed reservations about the merger and expressed concern because of the large cash outlay that would be required, Mr. McMahan at the request of Mr. Gould prepared an analysis which was designed to show what cash could be available from Meridian in the event of a catastrophic downturn in DLJ's securities business and a resulting liquidity problem at DLJ. [Plaintiff's Exhibit 10]. This analysis projected a possible $7.6 million dividend from Meridian by the end of 1974, on the assumption that Meridian would be able to refinance outstanding loans for which Meridian's cash is presently collateralized. While plaintiff contends this is part of a plan to "loot" Meridian, he adduced no proof to that effect. Mr. Gould and Mr. Harwood both testified and I accept their testimony that DLJ did not in fact intend to declare any

such dividend. They further testified that under present economic conditions and interest rates it is not feasible to undertake the substantial refinancing which would be necessary to make available any substantial amounts of cash from Meridian. [Gould; Harwood].

34. The practical effect of the merger will be the consolidation of Meridian's operations with those of DLJRE. The form of the proposed merger contemplates that Meridian will be merged with a wholly owned subsidiary of DLJRE which was organized under Delaware law on March 14, 1974, solely for the purpose of this merger. It is contemplated that Meridian will be the surviving corporation of that merger, with the result that Meridian will then be a wholly owned subsidiary of DLJRE. [Plaintiff's Exhibit 9]. Plaintiff has conceded that this is a procedure commonly utilized in effectuating mergers under Delaware law. [Plaintiff's Memorandum dated May 16, 1974, p. 8].

35. Procedurally it would be possible to merge Meridian directly into DLJRE and the effect would be no different to the shareholders than merging Meridian with a subsidiary of DLJRE. Due, however, to valid business reasons, it is planned that the merger will be between Meridian and a subsidiary of DLJRE formed for that purpose. In this way Meridian's corporate existence continues, there is no necessity to renegotiate the loans to Meridian, there are significant tax advantages and DLJRE's modus operandi as a holding company remains the same. [Kelly; Harwood].

36. The managements of DLJRE and Meridian as is evidenced by strategy reports prepared by both Harwood and Kelly in January 1974, contemplate a continuing corporate existence for Meridian with additional investments to be made in the real estate industry. Apart from the program of selling the old investment company assets, which was adopted before DLJ's May tender offer, there is no intention on the part of either Meridian or DLJRE managements to terminate Meridian as a going concern and liquidate all its assets. [Kelly; Harwood; Gould; Plaintiff's Exhibits 19–21].

37. There is no evidence to support plaintiff's claim that DLJ has failed to file any required documents with the Securities and Exchange Commission in connection with the May and September tender offers or the proposed merger.

38. There is no evidence to support plaintiff's claim that Meridian has failed to pursue any claims which it might have against former Meridian employees.

39. There is no evidence to support plaintiff's claim that DLJ or any of its subsidiaries or affiliates have misappropriated any of Meridian's corporate opportunities including any opportunity to purchase its own shares.

40. There is no evidence to support plaintiff's claim that the December 1973, Meridian Proxy Statement was false or misleading.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934, Title 15, U.S. C.A., § 78aa and the principles of pendent jurisdiction. Only defendants DLJ and Meridian have been served with process and are properly before this Court.

2. In contending that the proposed merger between Meridian and a subsidiary of DLJRE is illegal and should be enjoined, plaintiff relies almost exclusively on the recently decided case of Bryan v. Brock & Blevins Co., Inc., 343 F.Supp. 1062 (N.D.Ga.1972), aff'd 490 F.2d 563 (5th Cir. 1974) (hereinafter "Bryan") decided under Georgia law. For all the reasons discussed below I conclude that Bryan is distinguishable and inapplicable to the facts of this case.

3. In Bryan, plaintiff as the sole remaining minority shareholder in Brock & Blevins Co., Inc. ("Blevins") commenced an action to enjoin a pro-

posed merger between Blevins and a newly formed corporation called Power Erectors, Inc. ("Power"). The evidence indicated that there were only five stockholders of Blevins and that four of them had decided they wished to eliminate the fifth, the plaintiff, as a stockholder. The majority shareholders made repeated efforts to buy plaintiff's 15% minority interest in Blevins which was rejected because plaintiff felt that the price was too low. Following plaintiff's refusal to sell his minority interest in Blevins, the majority shareholders then formed "Power" with the obvious intent of "freezing out" plaintiff and for no other purpose. They then transferred their stock in Blevins in exchange for all the stock of Power and with Power then owning 85% of Blevins and the plaintiff 15%, the defendants undertook proceedings under the Georgia merger statute (similar to the statute in question) to merge Blevins into Power with plaintiff being forced to accept cash for his minority interest. The Court found (1) that Power itself had no corporate existence prior to its formation for the purpose of that transaction and (2) that there was no business purpose for a merger between Blevins and Power. Under these circumstances the Court of Appeals upheld the decision of the District Court. The merger of Blevins into Power was simply a paper transaction without any real effect on the business involved other than to get rid of the sole minority shareholder and it would not have been possible to eliminate the minority stockholder without the creation of the new corporation, Power. There was no business involved in *Bryan* and as the District Court emphasized, the company involved was a close corporation. This is certainly not the case here.

■ 4. The testimony is uncontradicted that both DLJRE and Meridian have valid business reasons for seeking a consolidation of their operations. These reasons are:

(a) Both Meridian and DLJRE through their subsidiaries are presently engaged in similar businesses making a merger between their operations a logical proposition.

(b) The testimony established that there is a justified concern that as long as a public minority exists in Meridian, joint ventures and business dealings between the corporations will be inhibited by potential claims of conflict of interest by either Meridian or DLJ shareholders. See e. g. Getty Oil Company v. Skelly Oil Company, 267 A.2d 883 (Del.1970); Marony v. Applegate & Rockefeller, 266 App.Div. 412, 42 N.Y.S.2d 768 (1943). This consideration was recognized as a legitimate business purpose in Vorenberg, Exclusiveness of the Dissenting Stockholder's Appraisal Right, Harv.L. Rev. 1189, 1198 (1964), cited in the *Bryan* case and is certainly applicable here.

(c) The merger between the two real estate operations promises to effect savings in the day to day operations of the two corporations of more than $300,000 per year and of Meridian alone of approximately $200,000 per year.

5. The Court finds that the business reasons for the proposed merger described in the preceding paragraphs are valid, that the proposed merger is not a sham and that the *Bryan* case is therefore inapplicable.

■ 6. Plaintiff argues that this Court should enjoin the merger because the form of the transaction involves the creation of a newly formed DLJRE subsidiary with which Meridian will be merged. *Bryan* does not require such a restrictive approach. This Court recognizes that Meridian could be merged directly with DLJRE and in that event the effect upon plaintiff would be identical with that resulting from the proposed merger of Meridian with a subsidiary of DLJRE. The Court sees no proper purpose being served or benefit to the minority stockholders of Meridian by enjoining the proposed

merger with the DLJRE subsidiary and forcing defendants to structure the merger directly with DLJRE. On the contrary, the Court is satisfied that good business reasons exist both for Meridian and for DLJRE, for having Meridian merge with a subsidiary of DLJRE instead of with DLJRE itself. [Finding of Fact No. 35].

7. Since all the corporations involved in the proposed merger are Delaware corporations and the merger is to be done pursuant to the Delaware statutes, this Court is required to apply Delaware law to the extent that plaintiff relies on state law to enjoin the merger.

8. The crux of the matter, however, is that there is no support either by statute or case law for plaintiff's asserted *per se* rule that any time a newly formed subsidiary is created for the purpose of facilitating a merger the merger is illegal. Plaintiff does not dispute defendant's position that the procedure used in the proposed merger is a common one and has been frequently used before. (See plaintiff's memorandum dated May 16, 1974, p. 8). In one of the principal Delaware cases in this area, Greene & Co. v. Schenley Industries, Inc., 281 A.2d 30 (Del.Ch. 1971) in which the Delaware Court refused to enjoin a merger, the merger transaction involved a newly formed subsidiary formed solely for the purpose of the merger; indeed the merger was structured precisely like the one before this Court. Similarly, in Blumenthal v. Roosevelt Hotel, Inc., 202 Misc. 988, 115 N.Y.S.2d 52 (Sup.Ct.N.Y.1952, Breitel, J.), a leading New York case in which the court upheld the right of a corporation to merge with a subsidiary and eliminate a minority interest, the transaction involved the creation of a new subsidiary with which the publicly owned subsidiary was merged— exactly as is contemplated here.

9. To the extent the plaintiff contends that a merger between two corporations can *never* be effectuated with the minority receiving cash for their interest, Delaware law is specifically to the contrary. 8 Del.Code Ann. § 251 (1970). See Stauffer v. Standard Brands Incorporated, 40 Del.Ch. 202, 178 A.2d 311 (Del.Ch.1962), aff'd, 41 Del.Ch. 7, 187 A.2d 78 (Sup.Ct.1962); Greene & Co. v. Schenley Industries, Inc., 281 A.2d 30 (Del.Ch.1971). It is clear that the Delaware legislature has determined that a stockholder has no absolute right to his interest in the corporation and may be forced to surrender his shares for a fair cash price. Coyne v. Park & Tilford Distillers Corporation, 37 Del.Ch. 558, 146 A.2d 785, aff'd, 38 Del.Ch. 514, 154 A.2d 893 (Sup.Ct.1959); Matter of Willcox v. Stern, 18 N.Y.2d 195, 201, 273 N.Y.S.2d 38, 219 N.E.2d 401, 404 (1966). Indeed, statutes similar to the Delaware statute under which this merger is proposed exist in many states in the country. See e. g. Model Business Corporation Act § 71; Alabama Code Tit. 10, § 21(65); Cal.Corp. Code Ann. § 4103; Fla.Stat.Ann. § 608.20; Ken.Rev.Stat.Ann. § 271 A. 360; Maine Rev.Stat.Ann.Tit. 13, § 901; Michigan Stat.Ann. § 21.52; M.C.L.A. § 450.52; Minnesota Stat.Ann. § 301.42; New Jersey Stat.Ann. 14A:10–1; and New York Bus.Corp.Law § 902.

10. Plaintiff has introduced no substantial evidence to support a contention that the price is not fair. His contention that the price is unfair because the offered price is below the book value of Meridian stock finds no support in the law. On the contrary, there are numerous instances where the price to be paid for a minority's interest has been sustained where it is below book value. See Note, Valuation of Dissenters' Stock under Appraisal Statutes, 79 Harv.L.Rev. 1453, 1469 (1966). The evidence supports defendants' position that Meridian will be conducted as a going concern and plaintiff is thus not entitled to the liquidating value of its assets. Application of Delaware Racing Association, 213 A.2d

203, 209 (Del.Sup.Ct.1965); Sterling v. Mayflower Hotel Corp., 33 Del.Ch. 293, 93 A.2d 107, 111 (1952).

■ 11. The evidence established that since the announcement of the proposed merger, the bid price of Meridian stock has increased from $4.25 to approximately $8.00. The evidence further established to my satisfaction that if the merger is enjoined, the price will fall back to the $4.00 range. In view of the uncontradicted testimony that absent the merger it is highly unlikely that the stock price would be anywhere near $8.50 in the foreseeable future, enjoining the merger would be injurious to the more than 1,000 public stockholders of Meridian, other than Mr. Grimes. To the extent that Mr. Grimes believes the value is greater than $8.50, an appraisal proceeding presents an adequate remedy for him.

■■ 12. The minority stockholders of Meridian have a right not to be subjected to unequitable conduct on the part of the majority stockholder, DLJRE. Lebold v. Inland Steel Co., 125 F.2d 369 (7th Cir. 1941). In *Lebold* the majority shareholder dissolved a profitable steamship company, purchased the company's assets at a sale at which it was the sole bidder, and continued to operate the steamships, absent the minority interest, for its own profit. Plaintiff minority shareholders were given the pro rata portion of the asset price of $700 per share. The Court found that the shares had an actual going concern value of $2,000 per share, that the majority had breached its fiduciary obligation to the minority and granted damages based on the difference in value. The DLJ, DLJRE or Meridian Board of Directors did not violate any fiduciary obligation to the minority stockholders in connection with the May or September tender offers or their plan to merge Meridian with a subsidiary of DLJRE. Unlike the case in *Lebold,* the evidence shows that the public minority shareholders of Meridian will be given the fair value of their shares. The Delaware statute clearly provides that Meridian and DLJRE stockholders have a right to have their corporations merge under Delaware law with the minority receiving cash for their interest. While plaintiff may not care to see this happen, since there is no evidence of fraud or over-reaching he is not entitled to enjoin the merger. Stauffer v. Standard Brands Incorporated, 40 Del.Ch. 202, 178 A.2d 311 (Del.Ch.), aff'd 41 Del.Ch. 7, 187 A.2d 78 (Sup.Ct.1962); Greene & Co. v. Schenley Industries, Inc., 281 A.2d 30 (Del.Ch.1971).

■ 13. Since DLJ had no intention to merge Meridian with DLJRE or any subsidiary or affiliate at the time of the May or September tender offers, it was under no duty to inform Meridian shareholders at the time of such tender offers that under certain circumstances Delaware law permitted a merger such as is now before the Court. Nothing in the case of Sonesta Int'l Hotels Corp. v. Wellington Associates, 483 F.2d 247 (2d Cir. 1973), requires disclosure of such a legal possibility.

14. To the extent that plaintiff seeks an injunction pursuant to the Securities and Exchange Act of 1934, this Court similarly concludes that plaintiff has failed to demonstrate that the merger is illegal and should be enjoined. Accordingly, it is

Ordered:

1. That plaintiff's request for a permanent injunction be and the same is hereby denied.

2. That judgment be entered in favor of the defendants.