George E. LEWIS, II, as Personal Representative of the Estate of Sarah D. Lewis, Deceased, and Mary Ann G. Lewis, Plaintiffs–Appellants,

v.

Robert L. CLARK, as Comptroller of the Currency of the United States, and First Florida Bank, N.A., a national banking corporation, Defendants–Appellees.

No. 89–3467.

United States Court of Appeals, Eleventh Circuit.

Sept. 20, 1990.

**1559**

George E. Lewis, II, Tallahassee, Fla., for plaintiffs-appellants.

Ken Sukhia, Asst. U.S. Atty., Tallahassee, Fla., Yvonne D. McIntire, Office of the Comptroller of the Currency, Washington, D.C., for Clark.

Howell L. Ferguson, Landers & Parsons, Tallahassee, Fla., for First Florida Bank.

Before FAY, Circuit Judge, RONEY *, Senior Circuit Judge, and PITTMAN **, Senior District Judge.

PER CURIAM:

Lewis State Bank, founded in 1856, was Florida's oldest bank in continuous operation. First Florida Banks, Inc., a registered bank holding company, owned 99.34% of Lewis State's stock. The plaintiffs owned 384 shares, which amounted to nine one-hundredths of one percent. The Comptroller of the Currency of the United

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

States approved a merger of Lewis State Bank into the closely held First Florida Bank, N.A. Under the terms of the merger, Lewis State Bank's minority shareholders were to receive *cash* for their shares, while the majority would receive *stock* in the merged bank.

■ In this suit to review the agency action, the district court upheld the Comptroller's approval of the merger. We reverse. We can find no authority that permits a majority of the stockholders to freeze out minority shareholders by requiring them to take cash over their objection thus permitting the majority to become 100% owners of the merged corporation. If minority stockholders object to taking stock in the merged corporation, they can be required to take cash, but when they want stock in the merged corporation, they are entitled to even treatment with all other holders of like stock.

In 1985, First Florida Banks, Inc., a registered bank holding company, together with the boards of directors of its subsidiary banks, decided to merge the subsidiary banks into the company's lead bank, First Florida Bank, N.A. (which at the time was known as First National Bank of Florida). Lewis State Bank was one of the 12 subsidiaries to be merged into First Florida. Since First Florida owned virtually all of the stock, substantially more than the required two-thirds of Lewis State Bank's outstanding common stock voted in favor of the merger in July 1985. *See* 12 U.S. C.A. § 215a. Plaintiffs, however, voted their Lewis State Bank shares against the merger. Subsequently, plaintiffs perfected their rights as dissenting shareholders under 12 U.S.C.A. § 215a(b).

The cash that First Florida offered to minority shareholders in the merger agreement was $21 per share, based on the $20.78 book value per Lewis State Bank common share outstanding as of March 31, 1985. The stock to be given the holding company as majority shareholder was .4303 shares in the merged bank for each share of Lewis State Bank stock it held.

By dissenting, the plaintiffs rejected First Florida's $21–per–share offer. Sub-sequently, the plaintiffs and First Florida failed to appoint a three-person appraisal committee pursuant to 12 U.S.C.A. § 215a(c) because they were unable to secure a mutually acceptable third appraiser. Accordingly, in June 1986, First Florida asked the Comptroller to appraise the dissenters' shares. The Comptroller allowed each party to submit materials for use in conducting the appraisal. Ultimately, relying principally upon the investment value method and data from a "peer group" of six banks, the Comptroller appraised the stock at $17.23 per share.

In June 1987, the plaintiffs instituted this action in the district court seeking judicial review of the Comptroller's (1) approval of the merger and (2) appraisal of their Lewis State Bank stock. *See* 28 U.S.C.A. § 1331 and 5 U.S.C.A. § 702. On April 4, 1989, the district court entered a final order affirming the Comptroller's actions. This appeal followed.

### The Take–Out Merger

■ In sustaining the merger, the district court relied upon *Beloff v. Consolidated Edison Co. of New York,* 300 N.Y. 11, 87 N.E.2d 561 (1949) and *Grimes v. Donaldson, Lufkin & Jenrette, Inc.,* 392 F.Supp. 1393 (N.D.Fla.1974), *aff'd,* 521 F.2d 812 (5th Cir.1975). Those cases are inapplicable, however, since both involved corporations that were publicly traded. The *Grimes* decision specifically distinguished *Bryan v. Brock & Blevins Co., Inc.,* 343 F.Supp. 1062 (N.D.Ga.1972), *aff'd,* 490 F.2d 563 (5th Cir.1974), on this ground. "[A]s the district court emphasized, the company involved was a close corporation. This certainly is not the case here." *Grimes,* 392 F.Supp. at 1402.

The Comptroller and First Florida cite federal and state statutes that permit cash to be used as consideration in mergers. *E.g.,* 12 U.S.C.A. § 215a; Delaware Code Annotated, Title 8, §§ 251, 253; Fla.Stat. Ann. § 607.227 (predecessor to § 607.1104, effective July 1, 1990). Nothing in these statutes expressly permits stockholders of the same class of stock to be differently treated. The statutes cited merely autho-

rize the use of cash as consideration for stock in mergers; they do not say that the minority can be *required* to accept cash where not all stockholders are required to accept cash. It is argued that there is nothing in the federal banking statutes, the Florida Banking Statutes or Florida General Corporation Act which prohibits cash-out mergers. This, however, overlooks the basic thesis that if owners of the same class of stock are to be treated differently, there should be some specific decision to that effect by Congress.

The district court's statement that because plaintiffs were minority shareholders they were not similarly situated with the holding company and therefore not entitled to equal treatment seems to fly in the face of well settled equality-of-treatment principles. There is a longstanding equity tradition of protection of minority shareholders in American jurisprudence. *See, e.g., Southern Pacific Co. v. Bogert*, 250 U.S. 483, 487–88, 39 S.Ct. 533, 535–36, 63 L.Ed. 1099 (1919). In the absence of a legislative history rejecting that tradition, we are not satisfied that the legislatures which enacted the statutes cited intended to depart from that tradition. *See Aaron v. SEC*, 446 U.S. 680, 709–12, 100 S.Ct. 1945, 1962–64, 64 L.Ed.2d 611 (1980) (Blackmun, J. concurring in part and dissenting in part). We do not discern the permissive and explicit authority from Congress that is necessary to support the Comptroller's approval of the take out merger in this banking case. *See Bloomington National Bank v. Telfer*, 699 F.Supp. 190 (S.D.Ind.1988).

It is well settled that when the Comptroller acts in excess of its statutory grant of power or contrary to constitutional right, as here, it is subject to restraint by the courts. 5 U.S.C.A. § 706(2)(A)–(C); *First Union Bank & Trust Co. v. Heimann*, 600 F.2d 91, 95 (7th Cir.), *cert. denied*, 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979); *Webster Groves Trust Co. v. Saxon*, 370 F.2d 381, 387 (8th Cir.1966).

■ We hold that without express statutory authority, the Comptroller has no authority to approve a merger which requires holders of stock of equal standing to take different forms of consideration.

## *The Appraisal*

■ As a second point on appeal, the plaintiffs question the appraisal process. Our decision that the plaintiffs are entitled to shares of common stock of First Florida Bank N.A. in the same ratio as was received by the majority stockholder of Lewis State Bank effectively moots this issue. In order to dispose of the case as far as this panel is concerned, however, even if the basic decision is not upheld, we would affirm the district court's refusal to invalidate the Comptroller's appraisal of the minority's shares of Lewis State Bank stock.

In conducting the appraisal, the Comptroller selected a "peer group" of six Florida banking organizations and, relying on data from those banks as well as from Lewis State Bank, utilized varieties of the adjusted book value [1] and investment value [2] methods. *See* Note, *Valuation of a Dissenter's Stock Under Appraisal Statutes*, 79 Harv.L.Rev. 1453 (1966). The Comptroller explained its reasons for rejecting other valuation methods as follows:

1. *Unadjusted Book Value* was based on historical costs and did not reliably reflect investors' perceptions of the

---

1. The Comptroller applied the adjusted book value method by multiplying Lewis State Bank's book value on the date of the merger ($21.84 per share) times the average ratio of market price to book value for the peer group. This ratio, the Comptroller reasoned, measured the premium or discount to book value that investors attributed to the conditions and prospects of Lewis State Bank's similarly situated banks.

2. In conducting the investment value method, the Comptroller used the earnings multiplier approach. By using historical data from Lewis State Bank, the Comptroller determined that Lewis State Bank's potential earnings capacity per share was $3.74. The Comptroller multiplied this figure by a price/earnings multiple of 4.7, derived from the price/earnings ratio of the peer group banks. This multiple, the Comptroller reasoned, reflected investor perception of the market value of a group of Florida banking stocks comparable to Lewis State Bank, and was therefore appropriate for use in estimating the investment value for Lewis State Bank's stock.

value of Lewis State Bank as a going concern;

2. *Net Asset Valuation* (as a means of adjusting Lewis State Bank's book value) posed a danger of distortion because (a) while some of Lewis State Bank's assets and liabilities could be readily adjusted based on available market data, others could not; and (b) such valuation failed to take into account the interrelated values among Lewis State Bank's assets, liabilities, customer relationships and staff expertise;

3. *Market Value* rested on infirm ground because Lewis State Bank's stock was not actively traded.

The Comptroller assigned greater weight to the figure it derived from the investment value method, noting that this method was income-based while the adjusted book value method was asset-based, and reasoning that more relative importance has been attributed to the income statement in recent years. The Comptroller arrived at an appraisal of $17.23 per share.

The Comptroller declined to accord weight to some of the material submitted by plaintiffs, stating that:

1. Lewis State Bank's being the oldest bank in continuous operation in Florida was of no use in the appraisal, because it was a trait that could not be valued;

2. The terms under which the holding company acquired a majority interest in Lewis State Bank in 1974, as well as the performance of the bank, though relevant in 1974, were not useful in appraising the Lewis State Bank stock more than a decade later;

3. Plaintiffs' proffered "comparable sales" situations, in which a premium is paid by an acquirer in order to gain ownership control of particular institutions, are distinguishable, since in the case of Lewis State Bank, the holding company *already had* control and had enjoyed it since 1974; as far as the holding company was concerned, the merger was more a corporate reorganization than an acquisition.

Plaintiffs object to several aspects of the appraisal. First, they challenge the Comptroller's rejection of market and asset based valuations. With respect to market value, they acknowledge that Lewis State Bank stock was thinly traded, but argue that First Florida's $21–per–share offer provided a reliable market price for valuation purposes and should have been utilized. With respect to asset valuation, they urge that the Comptroller unreasonably disregarded certain valuable assets of Lewis State Bank, including (1) its bank building, sold at a substantial profit in December 1985 (after the merger), and (2) the fact of its having been Florida's oldest bank, which the merged bank later stressed in its advertising and capitalized upon by calling itself *First* Florida Bank, N.A. Moreover, they question the validity of the Comptroller's reasoning concerning "distortions" in asset value, given the fact that state and federal bank examiners' efforts, to which Lewis State Bank was subject, were specifically designed to avoid such distortions. They contend that the Comptroller has become "rigidly formulistic" in conducting appraisals, ignoring distinctive facts about the bank whose stock is being appraised. They label the Comptroller's Lewis State Bank appraisal simply a "reheated" version of an appraisal it conducted six months earlier of another Florida bank's stock.

Second, plaintiffs contend that the Comptroller failed to appreciate the security interest owned by them. They argue that their stock was actually different in character from ordinary common stock because they had been assured in 1974 when the holding company first acquired a majority interest in Lewis State Bank that they could retain their Lewis State Bank stock indefinitely. They analogize their stock to a kind of preferred stock. Therefore, they argue, the Comptroller erred in appraising it by comparison to the peer group banks' common stock.

Third, plaintiffs assert that a number of errors infected the Comptroller's "peer group" methodology. They argue that the Comptroller did not select a reasonable peer group of banks, since, (1) none of the banks in the peer group was controlled by

a multi-bank holding company, as Lewis State Bank was, and (2) with two exceptions, no bank in the peer group was comparable to Lewis State Bank during the relevant time period, according to the compilation of the Federal Financial Institutions Examination Council. Plaintiffs claim due process error in the Comptroller's failure to disclose, in the administrative record, the banks in the peer group and the information relied upon in selecting the peer group. Finally, plaintiffs argue that the Comptroller relied upon unreliable market information for the peer group banks.

■ The Comptroller's appraisal is reviewed under a deferential standard: was it "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706(2)(A). We do not assess whether the appraisal was correct or utilized the best methods. We determine only whether it was reasonable. *Keeffe v. Citizens & Northern Bank*, 808 F.2d 246 (3rd Cir.1986); *Beerly v. Department of Treasury*, 768 F.2d 942, 945 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 301 (1986).

We agree with the district court that the Comptroller's explanations of each of the challenged features of its appraisal are reasonable. The Comptroller's refusal to use First Florida's $21-per-share offer as the shares' market value is consistent with a crucial presumption underlying market valuation: its very reliability derives from its disregard of insider transactions. *See* Note, *Valuation of a Dissenter's Stock*, 79 Harv.L.Rev. at 1460. Similarly, the Comptroller's explanations for rejecting asset valuation and unadjusted book value have withstood judicial scrutiny for reasonableness several times. *E.g.*, *Beerly*, 768 F.2d at 946; *Yabsley v. Conover*, 644 F.Supp. 689, 694–95 (N.D.Ill.1986).

With respect to plaintiffs' claims that they had contracted for the right to retain their stock in Lewis State Bank "indefinitely" when the holding company acquired control of Lewis State Bank in 1974, there seems to be no evidence in the record that such a contract was ever consummated.

Although the record does contain a 1972 letter to the holding company from counsel for Lewis State Bank that arguably refers to the possibility of such an agreement, calling it "a side agreement with the members of the Lewis family [that] can be executed at a later date," there is no indication that such an agreement was ever drafted, much less accepted by the parties. In fact, in a June 1986 letter to the Comptroller, plaintiffs' counsel acknowledged that the "side agreement" referred to was never, to his knowledge, reduced to writing. Thus, the claim that the Comptroller appraised the wrong security interest is without merit.

Nor is there any reversible error in the Comptroller's selection of the peer group banks or use of published market information for those banks. Although explanations for these decisions did not appear in the administrative record, we are satisfied with the reasonableness of the explanations presented in the Comptroller's brief, and agree with the district court that there is no need to remand to the Comptroller only to obtain the same explanations:

(1) that public sources of market information were used for the peer group banks so that others could easily duplicate the Comptroller's appraisal calculations, and

(2) that the peer group banks were selected based on their comparability to Lewis State Bank in terms of location, market area, assets, and return on equity.

Because the district court evaluated these *post hoc* explanations critically, there was no error in its refusal to remand. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971); *First Union Bank & Trust Co.*, 600 F.2d at 96. The plaintiffs' due process argument is not persuasive, since (1) the Comptroller's appraisal is not an adversary adjudication, and (2) plaintiffs were invited to, and did, submit material and arguments for the Comptroller to use in the appraisal.

We need not reach plaintiffs' constitutional challenge to the appraisal statute's

failure to provide for interest, since this issue was neither properly preserved by the plaintiff nor addressed by the district court. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Denis v. Liberty Mutual Ins. Co.*, 791 F.2d 846, 848–49 (11th Cir.1986).

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this decision.

REVERSED and REMANDED.